THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY W. BIGGERSTAFF, Defendant-Appellant.

Fifth District    No. 5—94—0695

Opinion filed April 18, 1997.

---

disagree with her version of the truth and charge her with perjury).

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Wayne Morris, State's Attorney, of McLeansboro (Norbert J. Goetten, Stephen E. Norris, and Kendra S. Mitchell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE KUEHN delivered the opinion of the court:

This case features charges of murder in the first degree and aggravated discharge of a firearm. The accused entered a plea of not guilty. He then stood trial by jury. The jury deliberated on the evidence presented at trial and returned guilty verdicts on both charges. The defendant was sentenced to 50 years in prison for the offense of first-degree murder. The defendant appeals his conviction.

At first blush, the case appears rather unremarkable, tracking a path to verdict common to most cases. Both verdicts are clearly supported by the evidence. However, the verdicts do not reflect a jury determination of what was ultimately placed at issue by defendant's not-guilty plea. The crime of involuntary manslaughter, one of the potential offenses placed at issue, was submitted without a mechanism for the jury to decide guilt or innocence. The jury decided guilt without instruction that allowed it to acquit.

We are thus asked, in the face of overwhelming evidence favoring conviction, to grant defendant a new trial. The request tests a core value of the process by which we judge our fellow man. It questions a verdict of guilt reached by a jury that was not empowered to find innocence.

We must decide whether the failure to provide a jury with the option to acquit, no matter how unlikely the possibility, invalidates a guilty verdict. Since the decision on guilt or innocence is the essence of trial by jury, we grant defendant a new trial. No matter how obvi-

ous a defendant's guilt, no matter how overwhelming the evidence, no matter what his lawyer thinks or tells the jury, the constitution entitles him to a jury verdict that decides guilt or innocence. *Sullivan v. Louisiana*, 508 U.S. 275, 277-78, 124 L. Ed. 2d 182, 188, 113 S. Ct. 2078, 2080-81 (1993).

There is no real dispute over what happened. The defendant spent most of March 30, 1994, playing pocket pool. He was also drinking beer and whiskey. He was with an old friend named George Feuquay. At one point, Feuquay and defendant had a disagreement over a playing partner for one of the pool games. Feuquay insulted defendant by assigning him a partner that he did not like.

Later that day, defendant left the tavern and went home. He loaded his shotgun and walked down the street to visit his old friend. He entered Feuquay's trailer, sat down on the living room couch, and declared their friendship a thing of the past. Feuquay, who was sitting in a chair facing defendant, started to get up. The defendant then shot and killed him.

The defendant stood trial. Despite testimony that attempted to posture fear as the impetus for the killing, despite defendant's effort to implicate an imperfect self-defense second-degree murder instruction, no second-degree murder instruction was tendered. Rather, defense counsel sought and received instruction on the offense of involuntary manslaughter. This lesser-included offense was thus placed in issue for the jury's consideration. The concluding instruction for homicide cases implicating second-degree murder, as well as involuntary manslaughter, was used as the form for instructing the jury. Pattern instruction number 26.01J (Illinois Pattern Jury Instruction, Criminal, No. 26.01J (3d ed. 1992)) was altered to instruct on first-degree murder and involuntary manslaughter. It was fashioned to read:

> "The defendant is charged with the offense of first degree murder. Under the law, a person charged with first degree murder may be found (1) not guilty; or (2) guilty of first degree murder; or (3) guilty of involuntary manslaughter.
>
> Accordingly, you will be provided three verdict forms; 'not guilty of first degree murder', 'guilty of first degree murder', and 'guilty of involuntary manslaughter.' "

The jury was not provided with a general not-guilty verdict or an involuntary manslaughter not-guilty verdict. Thus, the jury could only decide whether the State had failed to establish first-degree murder beyond a reasonable doubt. It was afforded no mechanism to decide whether the State had failed to prove defendant's guilt beyond a reasonable doubt.

It is undisputed that the trial court departed from pattern instruction number 26.01J. This departure was accompanied by the tender of verdict forms inconsistent with those contemplated by the instruction. The contemplated verdict forms do not preclude consideration of acquittal.

The State takes two positions. First, it contends that the verdict form of "not guilty of first degree murder" afforded the jury an opportunity to return a verdict that could serve as a general acquittal of all homicide offenses. The State's backup position relies upon the benign nature of the error. It contends that the evidence in the case, coupled with defense counsel's strategy in defending against it, renders the error harmless.

The State offers no authority for its first position. It postulates the return of a verdict of not guilty of first-degree murder. Due to the jury's charge to select only one of the three available verdicts, it reasons that such a return would have had the practical effect of a general acquittal of all homicide offenses. We are not ready to declare that a verdict of not guilty of murder in the first degree operates as a general acquittal of all homicide offenses. The doctrine of implied acquittal has never been applied to the situation here, where the defendant was found guilty of the greater offense but no verdict was rendered on the lesser offense. The doctrine has only been used in situations where the defendant was found guilty of the lesser offense and no verdict was rendered on the greater offense. See *People v. Barnard*, 104 Ill. 2d 218, 470 N.E.2d 1005 (1984).

The State's position calls for the conclusion that its hypothetical jury would necessarily have decided the weight of evidence pertaining to involuntary manslaughter, had it decided that the State failed to prove first-degree murder beyond a reasonable doubt. Since the hypothetical jury would have bypassed guilty of involuntary manslaughter as its singular verdict and opted for a first-degree murder notguilty verdict, the State contends that such a verdict would operate as a decision on involuntary manslaughter. We disagree.

We do not know what this jury did in reaching its guilty verdict. We do know that it did not consider a not-guilty verdict. The State's hypothetical verdict would have decided no more than what it was designed to decide. It would have decided that defendant had not been proven guilty of first-degree murder.

Pattern instruction number 26.01J, the instruction modified for use in this case, was designed for cases where second-degree murder was also to be considered by the jury. Given the fact that only involuntary manslaughter was to be considered, pattern instructions for lesser-included offenses should have been used. Nevertheless, any

pattern instruction in the 26.01 series of concluding instructions can clarify that a not-guilty first-degree murder verdict would not operate as a general acquittal of all homicide offenses.

The concluding pattern instructions are carefully crafted to eliminate legally inconsistent verdicts. Moreover, at the expense of a jury's freedom to independently decide failure of proof as to one in a series of potential homicide offenses placed at issue, the instructions and accompanying verdict forms prevent partial verdicts. Use of these instructions, together with their stated verdict forms, prevents a jury from deciding that the State failed to prove first-degree murder but then deadlocking, without decision, on the lesser-included offense of involuntary manslaughter. The design is calculated to avoid an isolated decision that does not resolve the case. If any concluding pattern instruction involving lesser-included offenses is followed, the jury cannot decide the greater offense in the defendant's favor, deadlock on the lesser-included offense, and require retrial confined to determination of guilt or innocence only on the undecided lesser crime. Since the jury in this case was only empowered to decide in favor of defendant on the crime of first-degree murder, it was effectively precluded from return of a general acquittal.

The State's second position is that the failure to provide a verdict form to acquit is not *per se* reversible error and was, in this case, harmless. The actual argument is instructive. The State points to a wealth of evidence, including defendant's judicial admission, that he fired the fatal shot. It points to defense counsel's counter in the face of this overwhelming evidence. Defense counsel, as a matter of trial strategy, actively pursued a guilty verdict on the lesser-included offense of involuntary manslaughter. The absence of a not-guilty verdict for the crime of involuntary manslaughter was entirely consistent with defense counsel's argument to the jury.

The State's brief reads, in pertinent part:

"[T]he strategy *** was to concede defendant's guilt of the offense of involuntary manslaughter *** and deny the mental state required for first degree murder. Consequently, *a verdict form that would have allowed the jury to acquit the defendant altogether was not warranted by the evidence at trial or by the defendant's theory of defense.*" (Emphasis added.)

Although there is a certain appeal to this argument, for it stands true as a general proposition that could expedite a large number of criminal trials, the sixth amendment prevents our courts from applying its logic. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571-73, 51 L. Ed. 2d 642, 651-52, 97 S. Ct. 1349, 1354-55 (1977). If it were to be applied, courts could supplant their wisdom for the collec-

tive wisdom of juries and eliminate the risk of not-guilty verdicts inconsistent with their view of guilt. There are, indeed, cases where submitting only guilty verdict forms would not inflict much harm on a defendant. The harm would run only to the value and integrity of one of our most treasured institutions.

If the State's argument is sound, it would follow that the jury should have deliberated this case without the words *not guilty* having been tendered. The jury was told it could only select one verdict form. The first-degree not-guilty verdict form and the involuntary manslaughter guilty verdict form were not mutually exclusive. Both needed to be signed to arrive at a legally consistent verdict. The only verdict consistent with the single verdict form request was the first-degree murder guilty verdict. If defense counsel could concede guilt and preclude any chance of acquittal, only two guilty verdict forms should have been tendered.

Of course, the argument is flawed. The State draws upon a case that recognizes, as a matter of sound strategy, defense counsel's concession of guilt to a lesser offense to avoid conviction on a more serious offense. See *People v. Johnson*, 128 Ill. 2d 253, 538 N.E.2d 1118 (1989). In a given case, there is certainly nothing wrong with such a strategy, and defense counsel is not incompetent to employ it. But defendant is not deprived of a jury verdict on guilt or innocence because of it. *People v. Johnson* does not support the proposition that a jury may be instructed only as to degrees of defendant's guilt because his lawyer's strategy is to concede it. We know of no case, nor would we expect to find one, that holds harmless the failure to provide a not-guilty verdict form based upon defense counsel's concession of guilt. Defense lawyers do not decide their client's guilt, any more than prosecutors or judges do. The sixth amendment settled, long ago, how criminal responsibility is attributed to an accused in this country. As Justice Scalia recently pointed out:

"As we held in *Sullivan v. Louisiana*, *** a criminal defendant is constitutionally entitled to a *jury verdict* that he is guilty of the crime, and absent such a verdict the conviction must be reversed, 'no matter how inescapable the findings to support that verdict might be.'" (Emphasis in original.) *California v. Roy*, 519 U.S. 2, 6-7, 136 L. Ed. 2d 266, 271, 117 S. Ct. 337, 339 (1996) (Scalia, J., concurring in part, joined by Ginsburg, J.), quoting *Sullivan*, 508 U.S. at 279, 124 L. Ed. 2d at 189, 113 S. Ct. at 2082.

Sometimes, despite everyone's best efforts, mistakes are made during the course of a trial. We visit an endless array of trial errors with a paradigm that looks for fairness rather than perfection. We do not expect perfection. In fact, most trial errors are of a benign nature and, therefore, do not necessitate reversal.

Sometimes, however, a single mistake can be fatal, for it strikes at the heart of the trial process. Such errors transcend their harm. Thus, a brief absence of the judge during the progress of a criminal trial "is *per se* reversible error because the judge's presence is vital to the preservation of the integrity of the justice system and the defendant's right to a fair trial." *People v. Vargas*, 174 Ill. 2d 355, 370 (1996). We think a not-guilty verdict form's presence in the jury deliberation room is every bit as vital to the integrity of the justice system and defendant's right to a fair trial. The defendant, having entered a general not-guilty plea, was entitled to a jury empowered to decide that he was not guilty. The failure to provide a mechanism for such a decision, despite its improbability, constituted reversible error. Accordingly, we reverse and remand for a new trial.

Reversed and remanded.

HOPKINS and MAAG, JJ., concur.