STATE of Wisconsin, Plaintiff-Respondent,

v.

Andre D. HANSBROUGH, Defendant-Appellant.†

Court of Appeals

*No. 2010AP369–CR. Oral argument March 10, 2011.*
*—Decided May 11, 2011.*

2011 WI App 79

(Also reported in 799 N.W.2d 887.)

† Petition for Review.

On behalf of the defendant-appellant, the cause was submitted on the briefs of and oral argument by *Amelia L. Bizzaro* of *Henak Law Office, S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael C. Sanders*, assistant attorney general, and *J.B. Van Hollen*, attorney general. There was oral argument by *Michael C. Sanders*.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. NEUBAUER, P.J. Andre D. Hansbrough was found not guilty of first-degree intentional homicide, but guilty of felony murder, armed robbery, armed burglary and false imprisonment, all as a party to the crime. Hansbrough contends he is entitled to a new trial because the trial court failed to provide the jury with a not guilty verdict form for the lesser-included offense of felony murder. Hansbrough argues that this constituted structural error because it forced the jury to choose between first-degree intentional homicide or felony murder. Hansbrough additionally contends that he is entitled to a new trial based on the admission of improper testimony at trial. We conclude that the omission of the not guilty verdict form was not structural error, but rather trial error subject to a harmless error analysis. In the context of the entire trial and under the particular facts presented, we conclude that the error was harmless. We further reject Hansbrough's request for a new trial based on the admission of certain testimony. We affirm.

## BACKGROUND

¶ 2. Hansbrough was charged with party to the crimes of first-degree intentional homicide, armed robbery with use of force, armed burglary, and false imprisonment. The charges related to the events of August 21, 2007, which resulted in the murder of Antonio Strong and the false imprisonment of Strong's girlfriend, Yolanda King. Yolanda reported that at approximately 3:00 a.m. three black males with their faces covered entered the residence she shared with Strong. One of the males took her into the bathroom, pulled the shower curtain closed and pointed a gun at her while the other two individuals pointed what she believed to be a hand

gun and shotgun at Strong. While in the bathroom, Yolanda heard people talking and then shots being fired. The three individuals left the home, and Yolanda found Strong lying on the floor, shot more than once and bleeding badly. Strong was declared dead of shotgun wounds at the hospital later that morning.

¶ 3. Yolanda later identified one of the assailants, Ryan King, in a photo lineup. According to the criminal complaint, police interviews with Ryan King eventually led to the identification of five co-actors: Jonathan Bogan, Chevele Lyons, Jarrod Alston ("Slim"), Xavier Johnson and Hansbrough ("Beetle"). An interview with Bogan also pointed to Hansbrough's involvement.

¶ 4. Hansbrough pled not guilty to the charges and the matter proceeded to a five-day jury trial at which Yolanda, Bogan, and Alston testified. Yolanda maintained that she was aware of only three individuals in the apartment. Both Bogan and Alston testified that there were six individuals involved, five entered the apartment and Hansbrough was one of them. Hansbrough did not testify at trial; however, his defense theory was that he was not present at the apartment on August 21, 2007, and was not otherwise involved.

¶ 5. The jury found Hansbrough not guilty of first-degree intentional homicide, but guilty of being a party to the crimes of felony murder, armed robbery with use of force, armed burglary and false imprisonment. The parties stipulated to the dismissal of the armed robbery count prior to sentencing as it provided the underlying felony for the lesser-included offense of felony murder.[1] Hansbrough was sentenced to a total of

---

[1] *See State v. Krawczyk*, 2003 WI App 6, ¶ 26, 259 Wis. 2d 843, 657 N.W.2d 77 (Ct. App. 2002) (because the underlying felony is a lesser-included offense of felony murder, constitutional guarantees against double jeopardy prohibit conviction for both crimes).

thirty years' initial confinement and sixteen years of extended supervision.

¶ 6. Hansbrough filed a motion for postconviction relief on October 23, 2009. Hansbrough's challenges centered on (1) the trial court's failure to submit a not guilty verdict form to the jury on the lesser-included offense of felony murder and (2) evidentiary rulings made by the court regarding testimony from one of the investigating officers. With respect to the missing verdict form, Hansbrough's attorney recalled objecting to the missing verdict form during an off-the-record discussion but did not object on the record. Hansbrough requested that in the event of waiver, the court find ineffective assistance of counsel.

¶ 7. The court held a postconviction motion hearing on December 21, 2009. Hansbrough's attorney, Mark Richards, confirmed that he had objected to the missing verdict form and that his failure to object on the record was an "oversight"; the trial court accepted Richards' testimony that he objected. The trial court declined to find Richards ineffective, and instead found that any errors at trial were harmless. Hansbrough appeals.

## DISCUSSION

### I. The Failure to Provide a Not Guilty Verdict Form

¶ 8. The record reflects that the jury was provided with nine verdict forms for five possible counts. The jury received separate guilty and not guilty forms for each count with the exception of the lesser-included party to the crime of felony murder for which it received only a guilty verdict form. The parties do not dispute that the trial court erred in failing to give the jury a not guilty form for party to the crime of felony murder. It is

also undisputed that the trial court provided the jury with proper jury instructions. These instructions, given on the record and provided in packet form to the jury, advised the jury that in order to find Hansbrough guilty of party to the crime of felony murder, the State had to prove beyond a reasonable doubt all of the elements of the crime.

¶ 9. At the outset, we reject Hansbrough's contention that there must always be a not guilty verdict form for each guilty verdict form. As illustrated by Wis JI—Criminal 482, three verdict forms may be submitted when a defendant is charged with a lesser-included offense. When done properly, the jury is provided with three forms reading as follows: (1) "We, the jury, find the defendant, (name of defendant), guilty of (offense charged), as charged in the information"; (2) "We, the jury, find the defendant, (name of defendant), guilty of (included offense), in violation of § ___ of the Criminal Code of Wisconsin, at the time and place charged in the information"; and (3) "We, the jury, find the defendant, (name of defendant), not guilty." The jury is instructed: "It is for you to determine which one of the forms of verdict submitted you will bring in as your verdict." *Id.* Here, it is evident from the record that this was the intended approach taken by the State and trial court in providing the verdict forms. However, instead of encompassing both the charged offense and lesser-included offense, the not guilty form in this case provided only: "We, the jury, find the Defendant, Andre Hansbrough, not guilty of Party to the Crime of First-Degree Intentional Homicide as charged in Count One of the information." No mention is made of the lesser-included offense of felony murder and, thus, the provision of three verdict forms in this case was error. We turn to whether the error was structural error or trial error.

243

## A. Structural Error or Trial Error

¶ 10. A defendant has a constitutional right to a jury's determination of guilt beyond a reasonable doubt as to each charged offense. *See Sullivan v. Louisiana*, 508 U.S. 275, 277–78 (1993). Constitutional errors at trial fall into two categories: trial errors, which are subject to harmless error analysis, and structural errors, which "defy analysis by 'harmless error' standards." *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991). Structural errors are subject to automatic reversal. *State v. Ford*, 2007 WI 138, ¶ 43, 306 Wis. 2d 1, 742 N.W.2d 61. A structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id.* (quoting *Fulminante*, 499 U.S. at 310). Such errors "infect the entire trial process and necessarily render a trial fundamentally unfair." *Ford*, 306 Wis. 2d 1, ¶ 42 (quoting *Neder v. United States*, 527 U.S. 1, 8 (1999)). Structural errors "seriously affect the fairness, integrity or public reputation of judicial proceedings and are so fundamental that they are considered per se prejudicial." *Ford*, 306 Wis. 2d 1, ¶ 42 (citation omitted). Trial error, on the other hand, may be "quantitatively assessed" in the context of the other evidence presented in order to determine whether it was harmless beyond a reasonable doubt. *Fulminante*, 499 U.S. at 307–08.

¶ 11. In *Ford*, our supreme court recognized that the United States Supreme Court has found structural error in only a "very limited class of cases." *Ford*, 306 Wis. 2d 1, ¶ 43. Citing the Supreme Court's list in *Johnson v. United States*, 520 U.S. 461, 468 (1997), the *Ford* court noted the following cases: *Gideon v. Wainwright*, 372 U.S. 335 (1963) (the complete denial of

244

counsel); *Tumey v. Ohio*, 273 U.S. 510 (1927) (biased trial judge); *Vasquez v. Hillery*, 474 U.S. 254 (1986) (racial discrimination in grand jury selection); *McKaskle v. Wiggins*, 465 U.S. 168 (1984) (denial of self-representation at trial); *Waller v. Georgia*, 467 U.S. 39 (1984) (denial of public trial); and *Sullivan*, 508 U.S. 275 (defect in reasonable doubt instruction). *Ford*, 306 Wis. 2d 1, ¶ 43 n.4. This list illustrates the Court's "strong presumption that any other [constitutional] errors . . . are subject to a harmless-error analysis." *Neder*, 527 U.S. at 8 (quoting *Rose v. Clark*, 478 U.S. 570, 579 (1986)); *see also Chapman v. California*, 386 U.S. 18 (1967) (adhering to the general rule that a constitutional error does not automatically require reversal and noting that the harmless error analysis applies to most constitutional errors).

¶ 12. The parties do not cite to, nor have we uncovered, any Wisconsin or United States Supreme Court cases addressing whether failure to provide appropriate verdict forms constitutes structural error. However, we are guided by those cases in which the trial court erred during the instruction and deliberation phase of trial. *See Neder*, 527 U.S. at 4 (element of materiality not submitted to the jury); *Carella v. California*, 491 U.S. 263, 266 (1989) (jury instruction containing an erroneous conclusive presumption); *see also Fulminante*, 499 U.S. at 306–07, 309–10 (collecting cases, including *Clemons v. Mississippi*, 494 U.S. 738 (1990) (unconstitutionally overbroad jury instructions at sentencing stage of capital case)); *Rose*, 478 U.S. at 579–80 (jury instruction containing an erroneous rebuttable presumption); *Kentucky v. Whorton*, 441 U.S. 786, 787 (1979) (failure to instruct jury on presumption of innocence).

¶ 13. In *Neder*, the defendant was indicted on numerous counts of mail fraud, wire fraud, bank fraud, and two counts of filing a false income tax return. *Neder*, 527 U.S. at 6. The *Neder* Court considered whether the trial court's failure to submit the element of materiality to the jury on mail fraud and wire fraud was subject to a harmless error analysis. *Id.* at 6–7. In arriving at its decision, the Court observed: "Unlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id.* at 9.

¶ 14. In rejecting the proposition that the omission of an element will *always* render a trial unfair, the *Neder* Court noted that the opposite was true in that case: the defendant had been tried before an impartial judge, under the correct standard of proof and with the assistance of counsel, and a fairly selected, impartial jury was instructed to consider all of the evidence and argument relevant to the defendant's defense. *Id.* While the trial court had erred in failing to charge the jury with an element of the offense, the error did not render the trial "fundamentally unfair." *Id.* The reviewing court concluded that the government had presented overwhelming evidence supporting materiality, the defendant had not contested materiality, and the jury verdict would have been the same absent the error. *Id.* at 16–17.

¶ 15. The *Neder* Court distinguished the error from that in *Sullivan*, where the trial court gave the jury a defective reasonable doubt instruction in violation of the defendant's Fifth and Sixth Amendment rights to have the charged offense proved beyond a reasonable doubt. *Neder*, 527 U.S. at 10. While the

*Sullivan* Court held that the error was not subject to a harmless error analysis because "it vitiate[d] *all* the jury's findings" and produced "consequences that [were] necessarily unquantifiable and indeterminate," the *Neder* Court did not deem the jury instruction error to have the same effect. *Neder*, 527 U.S. at 10–11 (quoting *Sullivan*, 508 U.S. at 281–82).

¶ 16. The Wisconsin Supreme Court discussed at length the United States Supreme Court's holding in *Neder* when it applied a harmless error analysis in the context of an unconstitutional jury instruction that directed the jury's determination on an element of an enhanced offense. *State v. Harvey*, 2002 WI 93, ¶¶ 33, 39–49, 254 Wis. 2d 442, 647 N.W.2d 189. In *Harvey*, our supreme court concluded, as the United States Supreme Court did in *Neder*, that a jury instruction that omits an element of the offense "differs markedly from the constitutional violations we have found to defy harmless-error review" and did not necessarily render the trial fundamentally unfair. *Harvey*, 254 Wis. 2d 442, ¶ 37. In determining that the error was harmless, the *Harvey* court observed that the omitted element was "undisputed and indisputable" and therefore it was clear beyond a reasonable doubt that a rational, properly instructed jury would have found the defendant guilty of the enhanced offense. *Id.*, ¶ 48. Similarly, in *State v. Grinder*, 190 Wis. 2d 541, 556–57, 527 N.W.2d 326 (1995), the court concluded that the trial court's failure to read a not guilty verdict form to an otherwise properly instructed jury did not prejudice the defendant's right to a fair trial. The court determined that, when considering the jury instructions as a whole and the fact that the jury had been provided a not guilty verdict form, the failure to actually read the not guilty verdict form to the jury was harmless error. *Id.*

¶ 17. In drawing from the above cases and applying *Neder*'s reasoning, we conclude that the failure to provide the jury with a not guilty form for one of the five charged offenses did not constitute structural error. As will be discussed below, the timing of the error in this case—after the close of the trial and in conjunction with proper jury instructions—prevented the error from infecting the entire trial. Moreover, the particular facts of this case, including the number of charged offenses and Hansbrough's defense strategy, allow for the assessment of the error's effect in the context of the entire trial. *See Fulminante*, 499 U.S. at 307–08. We therefore conclude that the error in this case is not structural, but rather trial error subject to a harmless error analysis.

 B. *The Court's Failure to Provide a Not Guilty Verdict Form was Harmless Error.*

¶ 18. Having determined that the trial court's error is subject to a harmless error analysis, we examine whether the error in this case was in fact harmless. In Wisconsin, "[a] constitutional or other error is harmless if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *Harvey*, 254 Wis. 2d 442, ¶ 49 (quoting *Neder*, 527 U.S. at 18). In determining if a constitutional error is harmless, we consider the error in the context of the entire trial, including the nature of the State's evidence against the defendant and the nature of the defense. *See State v. Sorenson*, 143 Wis. 2d 226, 263, 421 N.W.2d 77 (1988). Based on our review of the record, it is clear beyond a reasonable doubt that a rational jury would

have found Hansbrough guilty of felony murder absent the trial court's failure to provide the not guilty verdict form.[2]

¶ 19. As noted earlier, Hansbrough was charged with five offenses, all occurring during a single event at a single residence. The surviving victim, Yolanda King, testified that she was aware of only three individuals in the residence; she did not identify Hansbrough as one of them. Rather, one of the defendants positively identified by Yolanda informed the police of Hansbrough's involvement. Hansbrough's defense throughout trial was that he was not at Strong's residence that night and had been

---

[2] We acknowledge Hansbrough's claim of ineffective assistance of counsel but do not address it separately as it would not alter our analysis. It is undisputed that Hansbrough's trial counsel did not object to the verdict forms on the record as required by WIS. STAT. § 805.13(3) (2009–10). *See* WIS. STAT. § 972.11(1) (making § 805.13(3) applicable to criminal trials). Because the trial court accepted counsel's testimony that he had objected during an off-the-record conference, Hansbrough requests this court to address the constitutional issue on the merits. The State, however, argues that the issue was waived and addresses it in the context of ineffective assistance of counsel, arguing that Hansbrough failed to prove that he was prejudiced by counsel's failure to object to the verdict forms. *See Strickland v. Washington*, 466 U.S. 668, 687–92 (1984) (setting forth the test for ineffective assistance of counsel). Our inquiry in determining whether Hansbrough's trial counsel's ineffective assistance was prejudicial is whether "there is a reasonable probability that, but for . . . [the] errors, the result of the proceeding would have been different." *See id.* at 694. Because Hansbrough's claim fails regardless of the analysis employed—harmless error or ineffective assistance of counsel—we proceed under the harmless error analysis.

All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

wrongly identified by individuals seeking to obtain favorable treatment by the State.[3]

¶ 20.　While the jury was not provided with a not guilty verdict form for the lesser-included charge of party to the crime of felony murder, it *was* provided with not guilty verdict forms for the remaining four offenses: first-degree intentional homicide, armed robbery with use of force, armed burglary and false imprisonment. The jury found Hansbrough not guilty of homicide, but did find him guilty of the remaining offenses. By finding him guilty of armed robbery, a charge for which the jury was provided with a not guilty form, the jury rejected Hansbrough's defense to the only disputed element of felony murder.[4] Thus, we agree with the State that the jury's verdict as to armed robbery, as well as armed burglary and false imprisonment, reflect its rejection of Hansbrough's sole defense. The jury clearly found that Hansbrough was at Strong's residence on the night Strong was murdered.

¶ 21.　The parties do not dispute that prior to arriving at these verdicts, the trial court properly instructed the jury on all charges, including that of party to the crime of felony murder. Prior to the

---

[3] We note the trial court's characterization at the postconviction hearing of Hansbrough's trial defense: "Mr. Hansbrough's . . . defense was he wasn't there. The argument to the jury was basically he wasn't there. These four other guys were all liars and that he was being set up by these other guys."

[4] The elements of felony murder are: (1) the defendant committed the crime of (armed robbery) and (2) the death of the victim was caused by the commission of that crime. *See* Wis JI—Criminal 1030. Here, everyone acknowledged that Strong was killed during the commission of an armed robbery. Thus, the only dispute was whether Hansbrough was involved in that armed robbery.

presentation of evidence and at the close of evidence, the court instructed the jury:

> The burden for establishing every fact necessary to constitute guilt is upon the State. Before you can return a verdict of guilt, the evidence must satisfy you beyond a reasonable doubt that the defendant is guilty. If you can reconcile the evidence upon any reasonable hypothesis consistent with the defendant's innocence, you should do so and return a verdict of not guilty.

As to felony murder, the court read the written instruction to the jury verbatim: "If you are not satisfied that the defendant is guilty of first-degree intentional homicide while armed you must consider *whether or not* the defendant is guilty of party to the crime of felony murder which is a lesser degree of criminal homicide." (Emphasis added.) It continued: "Before you may find the defendant guilty of party to the crime of felony murder the state must prove by evidence which satisfies you beyond a reasonable doubt that the following elements were present." The court detailed the elements of felony murder and informed the jury that the State must prove the elements beyond a reasonable doubt. Finally, the court instructed: "The law presumes every person charged with the commission of an offense to be innocent. This presumption requires a finding of not guilty unless in your deliberations you find it is overcome by evidence which satisfies you beyond a reasonable doubt that the defendant is guilty."

¶ 22. Hansbrough contends that despite the fact that the court properly instructed the jury, the failure to provide a not guilty verdict form deprived the jury of a mechanism by which to find Hansbrough not guilty of felony murder. As noted above, the State contends that the jury's guilty verdict as to armed robbery reflects the jury's rejection of Hansbrough's sole defense, including

251

his sole defense to felony murder. Hansbrough counters that absent a not guilty verdict form for felony murder, the jury likely assumed that guilt on that charge had been determined by the court and, therefore, it must also find guilt as to the underlying felony—armed robbery. We reject Hansbrough's theory. First, there is no indication in the record that it was ever suggested to the jury that Hansbrough's guilt with respect to felony murder had been decided by the court.[5] Second, it underestimates the jury's ability to understand and apply the instructions provided by the trial court. Here, the court expressly instructed the jury that it must *first* consider Hansbrough's guilt with respect to the armed robbery charge, essentially an "if/then" instruction—if you find Hansbrough guilty of the underlying felony, then you must determine his guilt as to the felony murder. The court instructed:

---

[5] We therefore reject Hansbrough's attempt to liken this case to those in which a not guilty verdict form and/or instructions were intentionally omitted. *See, e.g., People v. Biggerstaff*, 679 N.E.2d 118, 121 (Ill. App. Ct. 1997) (court's failure to provide not guilty verdict form or instruction was not harmless, noting that no case "holds harmless the failure to provide a not-guilty verdict form based upon defense counsel's concession of guilt"); *People v. Stockwell*, 217 N.W.2d 413, 415 (Mich. Ct. App. 1974) (reversible error where trial judge instructed the jury that there were only "three possible verdicts": guilty of murder in the first degree, guilty of murder in the second degree or not guilty by reason of insanity); *Pennsylvania v. Edwards*, 147 A.2d 313, 314, 318 (Pa. 1959) (court held fundamental error when trial judge ruled out the possibility of a not guilty verdict because the defendant admitted the offense but pled insanity). Here, the trial court's instructions to the jury belie any notion that the court intended to omit a not guilty verdict form which encompassed the lesser-included offense of felony murder.

If you are satisfied beyond a reasonable doubt that the defendant committed the crime of armed robbery and that the death of Antonio Strong was caused by the commission of the armed robbery, you should find the defendant guilty of party to the crime of felony murder. If you are not so satisfied then you must find the defendant not guilty of felony murder.

Given the court's instruction and the presumption that the jury follows the court's instruction, *State v. Truax,* 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989), we cannot share in Hansbrough's view that one must speculate as to how the jury approached the verdicts in this case. *See Peot v. Ferraro,* 83 Wis. 2d 727, 744, 266 N.W.2d 586 (1978) ("[t]his court has repeatedly expressed its faith in the jury system"). Any doubt is further allayed by the trial court's postverdict poll of the jury during which each juror confirmed his or her finding of guilt as to felony murder.

██

¶ 23. We conclude, in the context of the entire trial proceedings, the trial court's error in failing to provide the jury with a not guilty verdict form was harmless. Given that the trial court properly instructed the jury and that the jury found Hansbrough guilty of the related counts, we are satisfied beyond a reasonable doubt that a rational jury would have found Hansbrough guilty of felony murder even if it had been provided the proper verdict forms.

## II. Hansbrough is Not Entitled to a New Trial Because of Improperly Admitted Evidence.

¶ 24. Hansbrough contends that the trial court erred in denying his request for a new trial on grounds of improperly admitted evidence. The evidence in ques-

253

tion involves the testimony of Investigator David Shortess. First, Shortess recounted a conversation he had with the medical examiner in preparation for trial, but which is not documented and which the medical examiner did not testify about. Hansbrough contends that the admission of this hearsay evidence was improper. Second, Shortess speculated as to how the assault occurred, testifying that, in his opinion, Strong was shot in the left shoulder when a gun discharged during a pistol-whipping. Hansbrough contends that this testimony constituted inadmissible lay opinion testimony under Wis. Stat. § 907.01. Hansbrough concedes that his trial counsel, Mark Richards, chose not to object to the challenged hearsay testimony but to proceed with cross-examination; however, Hansbrough contends that counsel should not be held to waiver because counsel was forced to choose between two bad options in dealing with the improper testimony. As to the lay opinion testimony, Hansbrough contends that it was admitted despite his objection. We disagree with Hansbrough's characterization of the record and reject his arguments.

¶ 25. Failure to make a timely objection to the admissibility of evidence waives that objection. Wis. Stat. § 901.03(1)(a)[6]; *State v. Hoffman*, 106 Wis. 2d 185, 214, 316 N.W.2d 143 (Ct. App. 1982). Without an

---

[6] Wisconsin Stat. § 901.03 governs "[r]ulings on evidence." It provides:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context.

Sec. 901.03(1)(a).

objection, even an error based upon an alleged violation of a constitutional right may be waived. *Maclin v. State*, 92 Wis. 2d 323, 328–29, 284 N.W.2d 661 (1979); *State v. Williamson*, 84 Wis. 2d 370, 379–80, 267 N.W.2d 337 (1978). By failing to object to Shortess's testimony, Hansbrough waived his right to a review of any error in admitting that testimony. *See State v. Gustafson*, 119 Wis. 2d 676, 683, 350 N.W.2d 653 (1984).

¶ 26. One of the co-actors who testified at trial had changed his story several times—indicating for the first time in one of his later statements that Strong had been pistol-whipped and beaten prior to the shooting. Hansbrough's counsel intended to discredit that witness by flagging the lack of physical evidence corroborating his account, namely, that Strong's autopsy revealed no outward bruising or subdural hematomas. The exchange between Hansbrough's counsel and Shortess which resulted in the hearsay evidence issue was as follows.

> [Richards:] And according to the autopsy protocol performed by the doctor, there was [sic] no injuries or anything remarkable about his head, face, eyes, or lips, meaning Mr. Strong?
>
> [Shortess:] I had concerns about that, and what the medical examiner explained to me, that the period of time between the beating, if you will, and the time when [Strong] was shot and killed would not have given, because of circulation issues—
>
> [Richards:] I'm going to object to this testimony.
>
> [The Court:] Well—
>
> [Richards:] There's—there's no report of—go ahead. Answer it.
>
> [The Court:] Go ahead. He can answer it.

255

> [Shortess:] The [medical examiner] explained that be-
> tween the period of time when that beating occurred
> and the time when [Strong's] circulation would have
> stopped as a result of the gunshots, would not have
> provided an amount of time for those injuries actually
> to show themselves, bruising specifically.

At the postconviction hearing, Richards testified that
he withdrew his objection "[b]ecause it had been an-
swered in front of the jury, and if we didn't go into it, it
was just, to my feeling, it was going to look bad."
Richards testified that he had planned on addressing
the lack of corroborating physical evidence in his clos-
ing, but "did not really want it to come out the way it
did." Richard's testimony indicates a strategic decision,
not a complete lack of options. As the court pointed out
at the postconviction hearing, counsel could have main-
tained his objection or moved to strike Shortess's an-
swer as nonresponsive. And, as Richards testified at the
postconviction hearing, he did not attempt to recall the
medical examiner.

¶ 27. Hansbrough's challenge to the admission of
lay opinion testimony also relates to the alleged pistol-
whipping that occurred prior to the shooting. During
redirect examination by the State, the following ex-
change occurred:

> [State:] And you were asked about the pistol-whipping
> and the beating of Antonio Strong. Do you have any—
> any belief, based upon the evidence that you observed
> during your investigation, that the gun was near the
> head of Antonio Strong?
>
> [Shortess:] Yes.
>
> [State:] And what fact or factors did you rely upon to
> come to that conclusion or opinion?

[Richards:] I'm going to object. He's not qualified to give that opinion.

[State:] That the gun was by [Strong's] head?

[Richards:] Exactly. He wasn't there. He has no personal knowledge.

[State:] Well, that's why I—

[The Court:] Well, wait. There's evidence in the record that suggests that the gun was near the body of the decedent, and that's through the report, correct? . . . So, you know, can he testify as an expert in that regard, no, but in terms of the reports that are—that he reviewed and relied upon, I'm going to allow him to give the opinion because there's something in the record to indicate, at least, that the firing was at a close range, which is something that the Defense has made a big deal out of, appropriately, in my opinion, so—

[Richards:] I didn't think that's what he was asking. I have no problem if that's what he's asking.

Shortess went on to testify, without objection from Richards, as to his opinion regarding the pistol-whipping and beating. It was not until Shortess began to speculate as to what Strong was thinking during the assault that Richards made an objection which was then sustained by the trial court.

¶ 28. We conclude that Hansbrough waived his objection to the admission of Shortess's testimony, and we reject Hansbrough's request to review the admission of evidence despite waiver. *See State v. Wedgeworth*, 100 Wis. 2d 514, 528, 302 N.W.2d 810 (1981) ("Although objections which have been waived are not reviewable as a matter of right, [an appellate] court may consider

such objections if it chooses."). We nevertheless note our agreement with the trial court's assessment at the postconviction hearing:

> [I]f you take a look at the incident as a whole, on the night Mr. Strong died, it was a rather chaotic scene. You had a number of people in the apartment . . . . There were a lot of contradictory statements.
>
> But at the end of the day, the defense that Mr. Hansbrough put on was—the argument to the jury was he wasn't there . . . . [T]hat was basically his position. I wasn't there. I didn't participate in this . . . .
>
> [W]hat is it about Shortess' opinions that . . . make any difference as to . . . proving it more likely than not or beyond a reasonable doubt . . . that Mr. Hansbrough was or was not there?

In the end, the trial court determined that the errors did "not amount to anything resembling any type of significant error" and did not have "any effect on the ultimate outcome in the case." Based on our review of the record, we agree. We therefore reject Hansbrough's request for a new trial.

## CONCLUSION

¶ 29.　In light of the particular facts of this case, we conclude that the trial court's failure to provide a not guilty verdict form on the lesser-included offense of felony murder resulted in harmless trial error. We further conclude that any evidentiary errors were waived and, nevertheless, did not affect the outcome of the trial. We affirm the judgment.

*By the Court.*—Judgment affirmed.