# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP2140-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |     Plaintiff-Respondent, |
| |   v. |
| | Angelica C. Nelson, |
| |     Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 351 Wis. 2d 224, 838 N.W.2d 865
(Ct. App. 2013 – Unpublished)

| | |
|---|---|
| OPINION FILED: | July 16, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 18, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Eau Claire |
| JUDGE: | William M. Gabler Sr. |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ZIEGLER, J., concurs. (Opinion filed.) |
| DISSENTED: | ABRAHAMSON, C.J., BRADLEY, J., dissent. (Opinion filed.) |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs by *Michelle L. Velasquez*, assistant state public defender, and oral argument by *Michelle L. Velasquez*.

For the plaintiff-respondent, the cause was argued by *Aaron O'Neil*, assistant attorney general, with whom on the brief was *J.B. Van Hollen*, attorney general.

**2014 WI 70**

No.  2012AP2140-CR
(L.C. No.  2011CF523)

STATE OF WISCONSIN                  :          IN SUPREME COURT

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

**State of Wisconsin,**

       **Plaintiff-Respondent,**

  **v.**

**Angelica C. Nelson,**

       **Defendant-Appellant-Petitioner.**

**FILED**

**JUL 16, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1   PATIENCE   DRAKE   ROGGENSACK,   J.   We   review   an unpublished decision of the court of appeals[1] that affirmed a judgment the Eau Claire County Circuit Court[2] entered on a jury verdict convicting defendant Angelica Nelson of three counts of sexual assault of a child, contrary to Wis. Stat. § 948.02(2) (2011-12).[3]

---

[1] State v. Nelson, No. 2012AP2140-CR, unpublished slip op. (Wis. Ct. App. Sept. 4, 2013).

[2] The Honorable William M. Gabler, Sr. presided.

[3] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

¶2   Our review concerns the circuit court's refusal to allow Nelson to testify at trial based on a finding that she was not validly waiving her right against self-incrimination.  While Nelson did not intend to dispute that she engaged in conduct that met the elements of the crimes charged, she wanted to testify at trial because she "want[ed] [her] side to be heard."

¶3   Nelson argues that the circuit court's decision deprived her of her rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and that she is automatically entitled to a new trial because the denial of a defendant's right to testify is not amenable to harmless error review.

¶4   The State does not dispute that the circuit court erred in refusing to allow Nelson to testify.  Instead, it argues that harmless error review applies to that error under the governing framework of structural and trial errors.  It further argues that the error was harmless because evidence showed that Nelson admitted to having sexual intercourse with a 14-year-old victim on three occasions, and she did not intend to dispute that assertion if she testified.

¶5   We conclude that harmless error review applies to the circuit court's alleged denial of Nelson's right to testify because its effect on the outcome of the trial is capable of assessment.  See Arizona v. Fulminante, 499 U.S. 279, 307-08 (1991).  We further conclude that, given the nature of Nelson's defense and the overwhelming evidence of her guilt, the alleged

2

error was harmless beyond a reasonable doubt.   Accordingly, we affirm the decision of the court of appeals.

## I.   BACKGROUND[4]

¶6   Nelson was a friend of the family of the victim, D.M. She frequented D.M's neighborhood and walked D.M.'s younger siblings home from school on a regular basis.   She saw D.M.'s mother, Tamyra, nearly every day.   When she was 18 years old, Nelson met D.M., who was 14 years old at that time.

¶7   After she became acquainted with Nelson, Tamyra heard rumors that Nelson "thought [D.M.] was hot and that [Nelson] wouldn't mind dating him."   Tamyra told Nelson that under no circumstances was Nelson to be involved with D.M.

¶8   Shortly after having this conversation with Nelson, Tamyra heard that Nelson had not heeded her warning.   Tamyra sent a text message to Nelson and asked her if she had "sex" with D.M.   Nelson responded, "You're going to be mad at me; but, yes, I did."   After Tamyra reminded Nelson that D.M. was a child, Nelson texted back, "I know there[] [are] laws, but he's hot and I'm sorry."

¶9   Tamyra called the police, and Officer Dana Brown responded to Tamyra's home.   When Officer Brown arrived, Tamyra was on the phone with Nelson.   Tamyra placed the call on speakerphone, and Officer Brown overheard Nelson admit to having sexual intercourse with D.M. at least three times.   He also

---

[4] The following facts are taken from witness testimony at trial unless otherwise indicated.

viewed the text messages between Tamyra and Nelson on Tamyra's phone.

¶10 Officer Brown subsequently interviewed D.M. in his squad car. D.M. said that he had "sex" with Nelson on three consecutive days behind the Altoona elementary school and that it was Nelson's idea. While D.M. could not remember a specific date that the assaults occurred, he recalled that he received a citation for violating curfew just after the third assault. Officer Brown testified that D.M. received that citation on May 11.

¶11 Officer Scott Kelley followed up on Tamyra's complaint by interviewing Nelson at the police station. During that interview, Nelson told Officer Kelley that she had sexual intercourse with D.M., whom she knew to be 14 years old at that time, on three occasions behind the elementary school and that it was D.M.'s idea.

¶12 The State charged Nelson with three counts of sexual assault of a child, contrary to Wis. Stat. § 948.02(2).[5] The amended complaint stated that the assaults occurred on May 8, 9, and 10 of 2011. The State came up with these dates using the curfew citation D.M. received on the night of the third assault, and working backwards according to D.M.'s statement that the assaults occurred on three consecutive nights.

---

[5] Wisconsin Stat. § 948.02(2) provides that "[w]hoever has sexual contact or sexual intercourse with a person who has not attained the age of 16 years is guilty of a Class C felony."

¶13 Nelson initially pleaded not guilty by reason of mental disease or defect. After the circuit court found that, despite some mental limitations, Nelson could appreciate the wrongfulness of her conduct and conform it to the requirements of the law, Nelson changed her plea to not guilty.

¶14 At trial, the State presented testimony from Tamyra, D.M., and the two police officers. When the State rested, Judge Gabler asked Nelson's attorney if Nelson wanted to testify. Nelson said that she did. Judge Gabler proceeded to engage Nelson in a colloquy about waiving her right against self-incrimination, which Nelson said she understood.

¶15 Judge Gabler also asked Nelson about the substance of her testimony. Nelson said that she "want[ed] to tell what actually happened." She also wanted to testify that she did not unbuckle D.M.'s pants and that the assaults did not happen three days in a row. Judge Gabler explained that this testimony had no bearing on the elements of the offense, and made sure that Nelson's attorney had expressed to Nelson that "it wouldn't be a good idea" for Nelson to testify.

¶16 The circuit court then found that Nelson was not "intelligently and knowingly waiving her right against self-incrimination because she wants to testify to things that are completely irrelevant to the two things that the [S]tate has to prove."

¶17 The jury convicted Nelson on all three counts, and the court withheld a sentence and placed her on probation for five years. Nelson filed a motion for post-conviction relief,

5

asserting that the court violated her constitutional right to testify on her own behalf and therefore, a new trial was required. The circuit court denied Nelson's motion. The court of appeals affirmed, and we granted Nelson's petition for review.

## II. DISCUSSION

### A. Standard of Review

¶18 This review involves whether the harmless error doctrine applies to the denial of a defendant's right to testify. Whether a particular error is structural and therefore not subject to a harmless error review is a question of law for our independent review. State v. Travis, 2013 WI 38, ¶9, 347 Wis. 2d 142, 832 N.W.2d 491. Because we determine that harmless error review applies to the denial of the right to testify, we must also decide whether the error in this case was harmless. This likewise presents a question of law for our independent review. State v. Jackson, 2014 WI 4, ¶44, 352 Wis. 2d 249, 841 N.W.2d 791.

### B. Right to Testify

¶19 A criminal defendant has a personal, fundamental right to testify and "present his own version of events in his own words." Rock v. Arkansas, 483 U.S. 44, 52 (1987); State v. Weed, 2003 WI 85, ¶39, 263 Wis. 2d 434, 666 N.W.2d 485. This right originates from several constitutional provisions: the Fourteenth Amendment, which protects a defendant's due process right to be heard and offer testimony; the Compulsory Process Clause of the Sixth Amendment, which protects a defendant's

6

right to call witnesses in her favor; and the Fifth Amendment, which protects a defendant's right against compelled testimony "unless he chooses to speak in the unfettered exercise of his own will." Rock, 483 U.S. at 51-53 (quoting Harris v. New York, 401 U.S. 222, 230 (1971)) (further citation omitted).

¶20 The fundamental nature of the right to testify means that it is not subject to forfeiture. State v. Ndina, 2009 WI 21, ¶¶30-31, 315 Wis. 2d 653, 761 N.W.2d 612 ("[A] mere failure to object constitutes a forfeiture of [some] right[s] on appellate review. . . . [Other] rights are so important to a fair trial that . . . [they] may . . . be waived [only] personally and expressly."). It may not be waived by a defendant's silence. Weed, 263 Wis. 2d 434, ¶39. "[T]o ensure that a . . . defendant is knowingly, intelligently, and voluntarily waiving his or her right to testify," the circuit court must conduct a limited colloquy, inquiring as to whether the defendant is aware of his or her right against self-incrimination and has discussed the right with counsel. Id., ¶¶41, 43.

¶21 Nelson argues that the circuit court erred in this case because, having engaged in the colloquy required by Weed, it had no basis to find that she was not validly waiving her right against self-incrimination. Because the State does not dispute that the circuit court erred, we do not decide that issue. At the outset, however, we briefly review the law on that point as part of a full discussion of the issue.

¶22 We then proceed to Nelson's argument that denial of the right to testify is not subject to harmless error review

7

because it is not necessarily concerned with a defendant's chances of acquittal, but rather protects an individual's free choice and dignity. While we acknowledge the role of a defendant's autonomy in constitutional jurisprudence, we conclude that the denial of a defendant's right to testify is subject to harmless error review under Fulminante.

¶23 Finally, having concluded that the alleged error is not structural, we assess the testimony Nelson intended to provide in the context of the case as a whole, and conclude that any error was harmless.

## C. Decision to Testify

¶24 A defendant has the "ultimate authority to make certain fundamental decisions regarding the case," including whether to testify on his or her own behalf. Jones v. Barnes, 463 U.S. 745, 751 (1983). He or she retains this right "no matter how unwise such a decision." Ortega v. O'Leary, 843 F.2d 258, 261 (7th Cir. 1988).[6] This means that a circuit court cannot refuse to allow a defendant to testify solely because the court wishes to protect the defendant from himself or herself. Quarels v. Commonwealth, 142 S.W.3d 73, 79 (Ky. 2004); State v. Rivera, 741 S.E.2d 694, 703 (S.C. 2013). It also means that a circuit court must refrain from unduly influencing a defendant's decision.

---

[6] See also Boyd v. United States, 586 A.2d 670, 673-74 (D.C. 1991) (quoting People v. Curtis, 681 P.2d 504, 513 (Colo. 1984)) (further citation omitted). ("The wisdom or unwisdom of the defendant's choice does not diminish his right to make it.").

8

¶25 We have addressed this latter concern in the context of deciding whether to require circuit courts to engage in a colloquy to determine if a defendant is validly waiving the right to testify, or to refrain from doing so. First, in Weed, we noted "valid" concerns about influencing a decision that rests with the defendant. Weed, 263 Wis. 2d 434, ¶41. The United States Court of Appeals for the First Circuit succinctly summarized those concerns as follows:

> To require the trial court to follow a special procedure, explicitly telling defendant about, and securing an explicit waiver of, a privilege to testify . . . could inappropriately influence the defendant to waive his constitutional right not to testify, thus threatening the exercise of this other, converse, constitutionally explicit, and more fragile right.

Siciliano v. Vose, 834 F.2d 29, 30 (1st Cir. 1987). Notwithstanding these concerns, we decided to require a colloquy, as a "simple and straightforward" exchange would not sway a defendant. Weed, 263 Wis. 2d 434, ¶41. In a later decision, however, we declined to require circuit courts to engage in a similar colloquy for a defendant's decision not to testify because "inquiry into whether the defendant is aware of his or her corollary right not to testify runs a real risk of interfering with defense strategy and inadvertently suggesting to the defendant that the court disapproves of his or her decision to testify." State v. Denson, 2011 WI 70, ¶65, 335 Wis. 2d 681, 799 N.W.2d 831.

¶26 Our decision in Weed strikes a balance between ensuring that a defendant makes a knowing, intelligent, and

voluntary decision about whether to testify and avoiding inappropriately influencing that decision. Our later decision in Denson illustrates that improperly influencing a decision that belongs to the defendant remains a source of concern. Therefore, we note that by going beyond the limited colloquy in Weed, for instance by inquiring into the "advisability and the risk of taking the stand," a circuit court risks going too far. Arthur v. United States, 986 A.2d 398, 407 (D.C. 2009).

¶27 We do not decide, however, whether the circuit court erred in this case. The State does not dispute that the circuit court erred.[7] Therefore, we assume, without deciding, that error occurred, and analyze only whether that assumed error should result in a new trial.

## D. Harmless Error

¶28 Denial of a defendant's constitutional rights does not necessarily entitle him or her to a new trial. Chapman v. California, 386 U.S. 18, 22 (1967); State v. Kuntz, 160 Wis. 2d 722, 735-38, 467 N.W.2d 531 (1991). Rather, "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986). This is the doctrine of harmless error.

---

[7] This court is not bound by a party's concessions of law. State v. St. Martin, 2011 WI 44, ¶14 n.6, 334 Wis. 2d 290, 800 N.W.2d 858.

¶29 Wisconsin's harmless error rule appears in Wis. Stat. § 805.18. It is made applicable to criminal proceedings by Wis. Stat. § 972.11(1), and prohibits reversal in those cases for errors that do not affect the substantial rights of a defendant. State v. Armstrong, 223 Wis. 2d 331, 368 & n.36, 588 N.W.2d 606 (1999). As with its federal counterpart,[8] the Wisconsin rule accords a "strong presumption" that an error is subject to a harmless-error review. See State v. Hansbrough, 2011 WI App 79, ¶11, 334 Wis. 2d 237, 799 N.W.2d 887 (quoting Neder v. United States, 527 U.S. 1, 8 (1999)) (further citation omitted). Accordingly, "most constitutional errors can be harmless," and only a "very limited class of cases" require automatic reversal. Fulminante, 499 U.S. at 306; Johnson v. United States, 520 U.S. 461, 468 (1997).

¶30 For the purposes of determining when to apply harmless error review, the United States Supreme Court has set forth a dichotomy of error types. Fulminante, 499 U.S. at 307-10. First, there are trial errors, which "occur[] during presentation of the case to the jury and their effect may be quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt." United States v. Gonzalez-Lopez, 548 U.S. 140, 148 (2006) (quoting Fulminante, 499 U.S. at

---

[8] Wisconsin's harmless error rule is nearly "identical to the federal rule," which provides that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." State v. Harvey, 2002 WI 93, ¶39, 254 Wis. 2d 442, 647 N.W.2d 189; Fed. R. Crim. P. 52(a).

11

307-08) (internal quotation marks omitted).  The second type of error is structural.  These "defy analysis by harmless-error standards because they affec[t] the framework within which the trial proceeds, and are not simply . . . error[s] in the trial process itself."  Id. (quoting Fulminante, 499 U.S. at 309-10) (internal quotation marks omitted).  This latter type of error is "so intrinsically harmful as to require automatic reversal."  Neder, 527 U.S. at 7.

¶31 We have embraced this framework in our previous decisions.  Travis, 347 Wis. 2d 142, ¶54; State v. Harvey, 2002 WI 93, ¶¶36-39, 254 Wis. 2d 442, 647 N.W.2d 189.  In keeping with our tradition of interpreting Wisconsin's harmless error rule in a similar manner to its federal counterpart, we apply that test again today, and conclude that denial of the right to testify is subject to harmless error review.

¶32 An error denying the defendant of the right to testify on his or her own behalf bears the hallmark of a trial error.  That is, its affect on the jury's verdict can be "quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt."  Fulminante, 499 U.S. at 308.

¶33 We recognize that a defendant's testimony may be, on the whole, of particular importance to the issues in the case.  See Rivera, 741 S.E.2d at 704 ("it is difficult to fathom anything more logically connected to the fundamental issue" in a case "than a defendant's own testimony about the [crime]").  However, this does not make its absence incapable of assessment.

We agree with the following position of the Tennessee Supreme Court:

> In some cases, the defendant's testimony would have no impact, or even a negative impact, on the result of trial. Likewise, in some cases, denial of a defendant's right to testify may be devastating to the defense. However, under such circumstances, a reviewing court will simply conclude that the error was not harmless beyond a reasonable doubt. The fact that reversal may be required in some cases is no reason to eschew the harmless error doctrine entirely when the error involved is clearly of a trial, rather than a structural nature.

Momon v. State, 18 S.W.3d 152, 166 (Tenn. 1999) (internal citations and internal quotation marks omitted). Stated otherwise, denying a defendant the right to testify is not the type of error, "the effect[] of which [is] inherently elusive, intangible, and [therefore] not susceptible to harmless error review." Palmer v. Hendricks, 592 F.3d 386, 399 (3d Cir. 2010). Accordingly, harmless error review applies.

¶34 We also observe that, as with other errors in the "trial error" category, the denial of a defendant's right to testify occurs at a discrete point in the trial. By contrast, errors that are structural permeate the entire process. These include a complete denial of counsel, Gideon v. Wainwright, 372 U.S. 335, 344 (1963); a denial of counsel of defendant's choice, Gonzalez-Lopez, 548 U.S. at 150; a biased judge, Tumey v. Ohio, 273 U.S. 510, 534 (1927); racial discrimination during jury selection, Vasquez v. Hillery, 474 U.S. 254, 263 (1986); and denial of self-representation, McKaskle v. Wiggins, 465 U.S. 168, 177-78 n.8 (1984). Neder, 527 U.S. at 8. A defective

reasonable doubt instruction is also structural because it "vitiates <u>all</u> the jury's findings" by "erecting a presumption regarding an element of the offense." <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 280-81 (1993).

¶35 Our conclusion is consistent with the majority of other jurisdictions that on direct appeal have applied harmless error review to a circuit court's denial of a defendant's right to testify. <u>Quarels</u>, 142 S.W.3d at 82; <u>Momon</u>, 18 S.W.3d at 166; <u>People v. Solomon</u>, 560 N.W.2d 651, 655 (Mich. Ct. App. 1996).[9] Federal courts that have considered the issue in the context of habeas petitions have reached a similar result. <u>Gill v. Ayers</u>, 342 F.3d 911, 921-22 (9th Cir. 2003); <u>Ortega</u>, 843 F.2d at 262; <u>Wright v. Estelle</u>, 549 F.2d 971, 972, 974 (5th Cir. 1977). And, in the context of ineffective assistance of counsel claims, we note that a defendant does not automatically receive a new trial when deprived of the right to testify; rather, a defendant must proceed under the framework of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>State v. Flynn</u>, 190 Wis. 2d 31, 56, 527 N.W.2d 343 (Ct. App. 1994). That a defendant must show that the denial of his or her right to testify was prejudicial, then, is not a new concept.

---

[9] We note that in <u>Arthur v. United States</u>, 986 A.2d 398 (D.C. 2009), which held that the denial of a defendant's right to testify is not amendable to harmless error, the court seemed capable of assessing the effect of such an error in the context of other evidence. <u>Id.</u> at 416 (there was "a reasonable probability that but for the violation of appellant's right to testify, the jury would have had a reasonable doubt of his guilt").

14

¶36 Nelson attempts to avoid the result Fulminante dictates by employing a somewhat different test. She contends that the harmless error rule should not apply because the right to testify "is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, [and therefore] its denial is not amenable to 'harmless error' analysis." McKaskle, 465 U.S. at 177 n.8. Drawing on McKaskle, which held that the right to self-representation is not subject to harmless error review, she argues as follows:

> Like self-representation, the right to testify cannot be harmless because it is a right to make a personal decision that is founded on the respect for free choice and the human dignity of the individual citizen. (Citation omitted.) The denial of that right is structural, not because it is born from the belief that by doing so the defendant will have a better chance of acquittal, but because it is born from "the axiomatic notion that each person is ultimately responsible for choosing his own fate . . . ." Chapman v. United States, 553 F.2d 886, 891 (5th Cir. 1977).

¶37 We agree with Nelson that certain rights serve purposes other than to determine the guilt or innocence of a defendant. For instance, Nelson correctly notes that the right of self-representation is grounded in "respect for the individual," and that it "exists to affirm the accused's individual dignity and autonomy." Faretta v. California, 422 U.S. 806, 834 (1975) (quoting Illinois v. Allen, 397 U.S. 337, 350-51 (1970) (Brennan, J., concurring)); State v. Klessig, 211 Wis. 2d 194, 215-16, 564 N.W.2d 716 (1997) (quoting McKaskle, 465 U.S. at 178 (Abrahamson, C.J., concurring)).

15

¶38 Principles of self-determination also underlie the requirement that a defendant make certain decisions, such as whether to accept a plea, whether to try the case to a jury, and whether he or she will be present at trial.[10] Richard J. Bonnie, The Competence of Criminal Defendants: Beyond Dusky and Drope, 47 U. Miami L. Rev. 539, 553 (1993).

¶39 Additionally, autonomy has proven an important consideration in certain areas of constitutional jurisprudence, including reproductive rights,[11] search and seizure,[12] and self-incrimination.[13] Michael Heise, Equal Educational Opportunity and Constitutional Theory: Preliminary Thoughts on the Role of School Choice and the Autonomy Principle, 14 J.L. & Pol. 411, 452 (1998). We cannot conclude, however, that any of this means

---

[10] See Jones v. Barnes, 463 U.S. 745, 751 (1983).

[11] Carey v. Population Servs. Int'l, 431 U.S. 678, 687 (1977) (discussing the "constitutional protection of individual autonomy in matters of childbearing"); Griswold v. Connecticut, 381 U.S. 479, 485 (1965) (referencing "penumbral rights of 'privacy and repose'"); Roe v. Wade, 410 U.S. 113, 152 (1973) ("right of personal privacy, or a guarantee of certain areas or zones of privacy, does exist under the Constitution").

[12] Terry v. Ohio, 392 U.S. 1, 9 (1968) (quoting Union Pac. R. Co. v. Botsford, 141 U.S. 250, 251 (1891) ("No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.").

[13] Miranda v. Arizona, 384 U.S. 436, 460 (1966) ("the constitutional foundation underlying the privilege [against self-incrimination] is the respect a government——state or federal——must accord to the dignity and integrity of its citizens . . . to respect the inviolability of the human personality").

16

that Nelson is automatically entitled to a new trial, for the reasons we now explain.

¶40 First, while autonomy is an important constitutional value, the test of Fulminante makes no mention of the purpose of the right or the interests it serves. Rather, it defines structural error by only two characteristics, the timing of the error and its capacity for assessment. See Gonzalez-Lopez, 548 U.S. at 149 n.4 ("it is hard to read [Fulminante] as doing anything other than dividing constitutional error into two comprehensive categories").

¶41 Second, although McKaskle, which was decided before Fulminante, relied on the "irrelevance of harmlessness" in concluding that a defendant's right to self-representation is structural, McKaskle is distinguishable. Unlike denial of a defendant's right to testify, denial of the right to self-representation permeates the entire trial. Therefore, McKaskle comes squarely within Fulminante's description of a structural error. As such, we see no reason to depart from the Fulminante framework.

¶42 Finally, accepting Nelson's test would divorce the doctrine of harmless error from its purpose. Harmless error developed from the criticism that "[r]eversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it." Neder, 527 U.S. at 18 (quoting R. Traynor, The Riddle of Harmless Error 50 (1970)). Its application does not "reflect[] a denigration of the constitutional rights involved." Rose v.

17

<u>Clark</u>, 478 U.S. 570, 577 (1986).  Rather, it "strikes the appropriate balance between the judicial system's interest in obtaining reliable results and the system's competing interest in having litigation end at some point."  <u>Momon</u>, 18 S.W.3d at 167.  In other words, it furthers "the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence."  <u>Id.</u> at 165 (quoting <u>Van Arsdall</u>, 475 U.S. at 681).  As such, it makes sense to define the structural/trial error dichotomy by an error's capacity for assessment, rather than the nature or importance of the right the error affected.

¶43 For these reasons, we conclude that the denial of a defendant's right to testify is subject to harmless error review.  We now apply that rule to the alleged error in the present case.

### E.  Application

¶44 In order for an error to be harmless, the State, as the party benefitting from the error, must prove that it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error."  <u>Harvey</u>, 254 Wis. 2d 442, ¶46 (quoting <u>Neder</u>, 527 U.S. at 18); <u>State v. LaCount</u>, 2008 WI 59, ¶85, 310 Wis. 2d 85, 750 N.W.2d 780 (further citations omitted).  Stated otherwise, we must be satisfied "not that the jury <u>could</u> have convicted the defendant (i.e., sufficient evidence existed to convict the defendant), but rather that the jury <u>would</u> have arrived at the same verdict

18

had the error not occurred." State v. Martin, 2012 WI 96, ¶45, 343 Wis. 2d 278, 816 N.W.2d 270 (internal citation omitted).

¶45 In Martin, we recently articulated a non-exhaustive list of factors that aid in evaluating whether the State has met its burden. Id., ¶46. These included the following considerations:

> the frequency of the error; the importance of the erroneously admitted evidence; the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence; whether the erroneously admitted evidence duplicates untainted evidence; the nature of the defense; the nature of the State's case; and the overall strength of the State's case.

Id. Because that case involved an erroneous decision to admit evidence, and in the present case we assume error because of a decision to exclude evidence, Martin's terminology does not correspond perfectly to this case. Those factors do, however, provide useful ways to look at the effect of an error on the trial as a whole.

¶46 As was the court in Momon, we are persuaded that "[d]enial of a defendant's right to testify is analogous to denial of a defendant's right to effective cross-examination." Momon, 18 S.W.3d at 167. "In both instances, the defendant is being deprived of the right to present evidence to the jury." Id. Accordingly, we conclude that the following formulation from Momon, which is based on the language of Van Arsdall, correlates well to our pronouncement in Martin:

> [C]ourts should consider the following factors when determining whether the denial of the right to testify is harmless beyond a reasonable doubt: (1) the

19

importance of the defendant's testimony to the defense case; (2) the cumulative nature of the testimony; (3) the presence or absence of evidence corroborating or contradicting the defendant on material points; (4) the overall strength of the prosecution's case.

Id. at 168; see Van Arsdall, 475 U.S. at 684; State v. Norman, 2003 WI 72, ¶48, 262 Wis. 2d 506, 664 N.W.2d 97. We now apply those factors to the alleged error in the present case.

¶47 There is no denying that testifying at her own trial was important to Nelson. She wanted to recount the events from her own perspective, and thought that telling her side of the story would make her "feel better." These are not trivial concerns. Having one's voice heard is a key element of "procedural justice," which is grounded in the concept that if people perceive legal process as fair, they are more willing to accept legal rules and outcomes with which they do not agree. Tom R. Tyler & E. Allen Lind, Handbook of Justice Research in Law, 65 (Joseph Sanders & V. Lee Hamilton eds., 2001). However, we cannot say that it was important for the purpose of harmless error review, which is concerned with the accuracy of the verdict. Therefore, to the extent that Nelson would have taken the stand and admitted that she engaged in the conduct she was accused of, we conclude that the exclusion of that testimony was harmless.

¶48 Nelson also wished to offer a different account of the timing of the events and testify that she did not unbuckle D.M.'s pants. She did not intend to deny, however, that she had sexual intercourse with D.M. on three separate occasions and that she knew he was under the age of 16. Considering the trial

as a whole, we conclude that the exclusion of this testimony was likewise harmless.

¶49 The sole theory of Nelson's defense was to put the State to its burden of proving her guilty beyond a reasonable doubt.[14]  Interjecting an alternative version of events may have made it more difficult for a jury to find Nelson guilty beyond a reasonable doubt.  For instance, it could have cast doubt on D.M.'s ability to accurately recall the assaults.  This does not mean, however, that the result would have changed had Nelson testified on her own behalf.

¶50 This is so because the jury could have convicted Nelson even if its members did not agree on the timing of the events or who unbuckled D.M.'s pants.  See State v. Badzinski, 2014 WI 6, ¶28, 352 Wis. 2d 329, 843 N.W.2d 29 (quoting State v. Holland, 91 Wis. 2d 134, 143, 280 N.W.2d 288 (1979)) ("Unanimity

---

[14] Nelson's post-conviction counsel argued that testimony disputing that Nelson unbuckled D.M.'s pants and the timing of the events could have helped her defense because "if she had said that it only happened one time, that's it, and he forced himself on me, then she would, if the jury accepted such testimony, she clearly would be found not guilty of two of the three counts, perhaps found not guilty of the remaining count." It is certainly true that "where we have an assertion that it was the defendant who did not consent to the intercourse, that it was she who was raped by the child, then the issue of her consent becomes paramount." State v. Lackershire, 2007 WI 74, ¶29, 301 Wis. 2d 418, 734 N.W.2d 23.  The problem with this argument is that Nelson has never claimed that D.M. raped her. By considering it, we would be assessing the error not in the context of the case as a whole, but in the abstract. Additionally, because she does not make this argument on review, we need not consider it. Gister v. Am. Family Mut. Ins. Co., 2012 WI 86, ¶37 n.19, 342 Wis. 2d 496, 818 N.W.2d 880.

21

is required only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged, [it] is not required with respect to the alternative means or ways in which the crime can be committed.") (alteration in Badzinski). The only facts the jury needed to find were that Nelson had sexual intercourse with a person who had not attained the age of 16 on three occasions. Even if the jury believed Nelson's version of the events, or could not decide whether to believe Nelson or D.M., Nelson's testimony still would have made it more likely that those facts were true.[15] In that sense, her testimony was cumulative of the evidence the State presented, and bolstered its case against her. Because her testimony would have differed from the State's evidence only on immaterial points, it would not have aided in her defense.

¶51 Finally, we note the overwhelming strength of the prosecution's case. The State presented the testimony from the victim's mother and two law enforcement officers, all of whom said that Nelson admitted engaging in conduct that was contrary to the laws she was charged with violating. The victim himself corroborated this testimony. There was not a shred of evidence controverting the State's assertion that Nelson had sexual intercourse with D.M., who was under the age of 16 at the time. Therefore, we have no trouble concluding that the jury would

---

[15] See generally Bruton v. United States, 391 U.S. 123, 139-140 (1968) (White, J., dissenting) ("the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him").

have convicted Nelson even if she took the stand, and that any error in preventing her from testifying was harmless.

### III. CONCLUSION

¶52 We conclude that harmless error review applies to the circuit court's alleged denial of Nelson's right to testify because its effect on the outcome of the trial is capable of assessment. See Fulminante, 499 U.S. at 307-08. We further conclude that, given the nature of Nelson's defense and the overwhelming evidence of her guilt, the alleged error was harmless beyond a reasonable doubt. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶53 ANNETTE KINGSLAND ZIEGLER, J. *(concurring).* I join the majority opinion which affirms the decision of the court of appeals. I write separately and concur, however, because I would not assume that the circuit court erred. On this record, it is less than clear that the circuit court should have concluded that Nelson knowingly, intelligently, and voluntarily decided to testify. See State v. Weed, 2003 WI 85, ¶40, 263 Wis. 2d 434, 666 N.W.2d 485. Nelson's right to testify is unquestionably an important right. See Rock v. Arkansas, 483 U.S. 44, 53 n.10 (1987). Typically, a circuit court would be incorrect to deny a defendant that important right. On the record in the case at issue, however, given the nature of Nelson's defense, the fact that Nelson's testimony would only serve to incriminate her, and could, at best, lead to jury nullification, and considering Nelson and her counsel's own words, the circuit court was not necessarily incorrect. In fact, had Nelson taken the stand it would have been well within the circuit court's discretion to have precluded the only testimony that Nelson wished to offer. See State v. Bjerkaas, 163 Wis. 2d 949, 960, 472 N.W.2d 615 (Ct. App. 1991) (holding that a defendant has no right to urge a jury to nullify applicable laws). The circuit court was hard pressed to conclude that Nelson indeed knowingly, intelligently, and voluntarily reached the conclusion that she wished to testify.

¶54 A defendant's right to testify is not synonymous with a defendant's right to say anything he or she would like. Had Nelson been allowed to testify she would have been relegated to

1

incriminating herself, thus undercutting her defense——that being, that the State has not met its burden of proof. Majority op., ¶49. The record reflects that the circuit court was not convinced that Nelson was making her decision knowingly, intelligently, and voluntarily.

¶55 Simply stated, it is not completely clear that Nelson did in fact knowingly, intelligently, and voluntarily make a decision to testify and incriminate herself given the circumstances. Confronted with a less than satisfying exchange regarding Nelson's decision about testifying, the court stated:

> As Ms. Larson observed, she's never seen or heard of this in 21 years of being a prosecutor. I've never run across this kind of a situation either.
>
> I've tried to do some quick legal research. I can't find anything about what a judicial officer is to do under these types of circumstances.
>
> But I do know this, that in order for me to permit the defendant, any defendant, including Ms. Nelson, to testify, I have to make a finding that she's waiving her right against self-incrimination freely, voluntarily and intelligently and knowingly and that she understands her right to either testify or not testify.

The court further acknowledged:

> And it seems to me that based upon this limited colloquy that I've had with Ms. Nelson, I, and when I say limited, I think I've thoroughly explored the ins and outs of what she wants to testify to, but I can't find that Ms. Nelson is intelligently and knowingly waiving her right against self-incrimination because she wants to testify to things that are completely irrelevant to the two things that the state has to prove.

Considering the duty to make certain findings regarding her decision to testify, the court stated:

2

I'm also finding that she's -- that she's not intelligently and knowingly waiving her right against self-incrimination, because based upon the colloquy that I've had here with Ms. Bahnson, Angelica Nelson is doing this against the advice of her lawyer, at least with her lawyer telling her that it's not a good idea.

The court understood that "there are some instances in which a defendant could be inadvisably taking the witness stand. But it would be on elements, issues that are central to the case, that is, elements the state has to prove." Specific to this case, the court found:

Nelson wants to talk about all sorts of things that don't matter. And if she took the witness stand, under the circumstances, Ms. Larson could extract from Ms. Nelson the admissions that this occurred. So I just don't think I can make that finding. So I'm not going to let her testify.

Ultimately, the court concluded:

I'm reaffirming my decision and belief that Ms. Nelson is not freely -- she's not voluntarily and intelligently and knowingly waiving her right against self-incrimination, so I'm not going to permit her to testify.

¶56 The record reflects that the circuit court did not necessarily err in determining that Nelson was not knowingly, intelligently, and voluntarily making a decision to testify. See Weed, 263 Wis. 2d 434, ¶¶44-46. As such, it is far from certain that the circuit court erred when it precluded Nelson from offering irrelevant, excludable testimony.

¶57 At most, Nelson's testimony would have invited jury nullification. She "'want[ed] to tell what actually happened,'" that is, Nelson would testify that she did have intercourse with D.M., but she wanted to add that "she did not unbuckle D.M.'s

3

pants and that the assaults did not happen three days in a row." Majority op., ¶15. However, whether she unbuckled his pants or he unbuckled his own pants is of no help to Nelson, since consent was not an issue in this case. Similarly, whether the assaults occurred "three days in a row" is of no assistance to Nelson, since the State did not have to prove the exact date or time of the assaults in order to secure a conviction. Majority op., ¶50 (citing State v. Badzinski, 2014 WI 6, ¶28, 352 Wis. 2d 329, 843 N.W.2d 29); see also Wis. Stat. § 948.02; State v. Fawcett, 145 Wis. 2d 244, 250, 426 N.W.2d 91 (Ct. App. 1988). Nelson acknowledged that if she were to testify, she would have indeed admitted the sexual assaults charged. Id. Her only defense was to argue that the State failed to meet its burden of proof. Her testimony would have completely unraveled her only defense. Additionally, the circuit court would have been within its discretion to preclude the only testimony that Nelson wanted to offer, see Bjerkaas, 163 Wis. 2d at 960, and Nelson would have been left with only inculpatory testimony. On this record, the circuit court was hard pressed to conclude that Nelson was knowingly, intelligently, and voluntarily making the decision to testify.

¶58 The circuit court judge was between a rock and a hard place. If Nelson was allowed to testify, the court could be criticized for not insuring that she was knowingly, intelligently, and voluntarily deciding to testify, see Weed, 263 Wis. 2d 434, ¶40, and Nelson's counsel could be challenged as ineffective. See State v. Arredondo, 2004 WI App 7, ¶¶27-29,

4

269 Wis. 2d 369, 674 N.W.2d 647. If Nelson was not allowed to testify, the court could be viewed as depriving Nelson of her fundamental right to testify. See Harris v. New York, 401 U.S. 222, 225 (1971). In this case, there was no easy answer. I am duly concerned that on this record, had Nelson been allowed to testify we would be left to second-guess the circuit court's decision in that regard and likely reviewing a claim of ineffective assistance of counsel. Here, the circuit court seems to have done the best it could given the circumstances, and did not err in protecting Nelson from her own incriminating testimony.

¶59 As a result, while I conclude that it is indeed a rare circumstance that the circuit court should be allowed to preclude a defendant from testifying, the facts here indicate that the circuit court did not err in so concluding that Nelson was not knowingly, intelligently, and voluntarily making her decision to testify.

¶60 For the foregoing reasons, I concur.

¶61 SHIRLEY S. ABRAHAMSON, C.J. *(dissenting).* The record is clear in the instant case that the defendant wanted to testify. Although the right to testify is personal to the defendant and belongs exclusively to the defendant, the defendant both personally and through counsel (who advised the defendant against testifying) unequivocally asserted that she wanted to testify.

¶62 By prohibiting the defendant from getting on the stand and testifying on her own behalf, the circuit court denied the defendant the right to decide whether to testify, a decision that was hers alone to make. Jones v. Barnes, 463 U.S. 745, 751 (1983).

¶63 The majority opinion assumes that the circuit court erred when it refused to allow the defendant to tell her side of the story.[1] The concurrence concludes that the circuit court did not err in precluding the defendant from testifying.[2]

¶64 I would hold that the circuit court erred.

¶65 The majority opinion asserts the assumed error is subject to harmless-error analysis.[3] Many courts have held that the denial of a criminal defendant's right to testify is subject to harmless-error analysis.[4] Other courts, however, refuse to

---

[1] Majority op., ¶27.

[2] Concurrence, ¶55-56.

[3] Majority op., ¶5.

[4] Majority op., ¶35.

follow this principle and instead hold that the denial of the right to testify is not subject to harmless-error analysis.[5]

¶66 Whether an error is subject to harmless-error analysis is a question of law this court decides independently of the circuit court or court of appeals, benefiting from their analyses.[6]

¶67 I would hold that the error is not subject to harmless-error analysis.

¶68 A defendant has a fundamental right to testify. The United States Supreme Court has declared that the United States Constitution guarantees criminal defendants the right to testify, locating the right in the Fifth, Sixth, and Fourteenth Amendments of the Constitution.[7] The right to testify is

---

[5] See, e.g., State v. Rivera, 741 S.E.2d 694, 706 (S.C. 2013) ("[A] trial court's improper refusal to permit a defendant to testify . . . is not amenable to harmless-error analysis."); State v. Dauzart, 769 So. 2d 1206, 1210 (La. 2000) ("[D]enial of the accused's right to testify is not amenable to harmless-error analysis."); State v. Rosillo, 281 N.W.2d 877, 879 (Minn. 1979) ("[T]he right to testify is such a basic and personal right that its infraction should not be treated as harmless error.").

[6] State v. Travis, 2013 WI 38, ¶9 & n.9, 347 Wis. 2d 142, 832 N.W.2d 491.

[7] "The opportunity to testify is . . . a necessary corollary to the Fifth Amendment's guarantee against compelled testimony." Rock v. Arkansas, 483 U.S. 44, 52 (1987). The Sixth Amendment's Compulsory Process Clause guarantees a criminal defendant "the right to call witnesses in his [or her] favor." Id. (internal quotation marks omitted). The Fourteenth Amendment assures defendants the "right to be heard and to offer testimony" as a part of due process. Id. at 51.

See also State v. Albright, 96 Wis. 2d 122, 128, 291 N.W.2d 487 (1980).

embedded in the Sixth Amendment right to present a defense and to self-representation.[8] The right to testify is one of the rights that "are essential to due process of law in a fair adversary process."[9]

¶69 The Wisconsin Constitution explicitly states that criminal defendants "shall enjoy the right to be heard."[10]

¶70 The question before the court in the instant case is whether a defendant's fundamental constitutional right to testify is so fundamental to a fair trial that its infraction cannot be treated as harmless error. A limited class of fundamental constitutional errors exists that defies harmless-error analysis. The labels "structural error" and "non-structural error" have been assigned to constitutional errors. If the error is labeled "structural," then the harmless error analysis is not applied; reversal is automatic. These errors are "so intrinsically harmful as to require automatic reversal . . . without regard to their effect on [a trial's] outcome."[11] If the error is labeled "non-structural," then the harmless-error analysis is applied.

---

[8] Rock, 483 U.S. at 51.

[9] Id.

[10] Wis. Const. art. I, § 7. See State v. Denson, 2011 WI 70, ¶¶49-56, 335 Wis. 2d 681, 799 N.W.2d 831 (noting the protections provided by both the Wisconsin and federal constitutions for the right to testify and its corollary, the right not to testify).

[11] See Neder v. United States, 527 U.S. 1, 7 (1999).

3

¶71 Most constitutional errors are labeled non-structural. The United States Supreme Court has, however, enumerated several fundamental rights the denial of which is prejudicial per se and not subject to harmless-error analysis, including the right of self-representation,[12] the right to counsel,[13] and the right to an impartial judge.[14] The United States Supreme Court has not ruled on whether harmless-error analysis applies to denial of a defendant's right to testify.[15]

¶72 I conclude that the defendant's right to testify falls within this category of fundamental rights not subject to harmless-error analysis. I reach this conclusion for several reasons.

---

[12] McKaskle v. Wiggins, 465 U.S. 168, 177-78 & n.8 (1984).

[13] Gideon v. Wainwright, 372 U.S. 335, 343 (1963).

[14] Tumey v. Ohio, 273 U.S. 510, 535 (1927).

[15] Although one Wisconsin court of appeals case asserts that the United States Supreme Court has determined that harmless-error analysis applies to the deprivation of the right to testify, see State v. Flynn, 190 Wis. 2d 31, 56, 527 N.W.2d 343 (Ct. App. 1994), the Flynn case cited Crane v. Kentucky, 476 U.S. 683 (1986), for this proposition. Crane did not assert that harmless-error analysis applied. Rather, in Crane, the parties agreed that harmless-error analysis applied and the Court did not reach the issue. Also, the case involved the prosecutor's foreclosing the defendant's efforts to admit testimony on the environment in which police secured his confession, rather than foreclosing the defendant's testimony in its entirety.

In addition, the Flynn case itself can be distinguished because Flynn concerned an ineffective assistance of counsel claim, which has a different standard for determining prejudice than a harmless-error analysis.

4

¶73 First, the right to testify is meaningless if the defendant is not allowed to actually testify. Taking the stand is a defendant's opportunity to face his or her accusers, to tell his or her story, and to attempt to persuade those who will make a decision that will have a profound effect on his or her life and liberty. A defendant's opportunity to conduct his or her own defense by calling witnesses is incomplete if the defendant may not present himself or herself as a witness.[16]

¶74 "[T]he most important witness for the defense in many criminal cases is the defendant."[17] "[T]he right to speak for oneself entails more than the opportunity to add one's voice to a cacophony of others."[18] Barring a criminal defendant from testifying is not comparable to excluding a witness's testimony or particular evidence to which harmless-error analysis applies. The defendant is a very special witness. "[T]here [i]s no rational justification for prohibiting the sworn testimony of the accused, who above all others may be in a position to meet the prosecution's case."[19]

¶75 Second, the right to testify is intertwined and connected with the right of self-representation. Denial of the right of self-representation is not subject to harmless-error analysis. In Faretta v. California, 422 U.S. 806 (1975), the

---

[16] Rock, 483 U.S. at 52.

[17] Id.

[18] McKaskle, 465 U.S. at 177.

[19] Ferguson v. Georgia, 365 U.S. 570, 582 (1961) (emphasis added). See also Rock, 483 U.S. at 50 (quoting Ferguson).

5

United States Supreme Court vacated the conviction of a defendant who was not permitted to appear pro se. The Court did not analyze whether the defendant would have fared better with or without appointed counsel.

¶76 The right of a defendant to testify, according to Rock v. Arkansas, 483 U.S. 44, 52 (1987), is "[e]ven more fundamental to a personal defense than the right of self-representation."

¶77 If a defendant's right to testify is even more fundamental than the defendant's right of self-representation and the right of self-representation is not subject to harmless-error analysis, it seems to follow that denial of the right to testify is not subject to harmless-error analysis.

¶78 Third, the error in the present case of barring the defendant from testifying falls within the various formulations of an error not subject to harmless-error analysis. The test for determining whether a fundamental error is subject to harmless-error analysis is expressed in the case law in the following variety of ways. An error is not subject to harmless-error analysis if:

- The error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself."[20]

- The error "infect[s] the entire trial process,"[21] and renders the entire trial "fundamentally unfair."[22]

---

[20] Arizona v. Fulminante, 499 U.S. 279, 310 (1991).

[21] Brecht v. Abrahamson, 507 U.S. 619, 630 (1993).

6

- The error deprives a defendant of "basic protections" without which "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair."[23]

- The error seriously affects "the fairness, integrity or public reputation of judicial proceedings and [is] so fundamental that [it is] considered per se prejudicial."[24]

- The error is "so basic to a fair trial" that it "can never be treated as harmless error."[25]

- The error undermines a right founded on the respect for free choice and the human dignity of the individual.[26]

---

[22] Neder v. United States, 527 U.S. 1, 8 (1999) (citing Rose v. Clark, 478 U.S. 570, 577 (1986) (internal quotation marks and citation omitted); Fulminante, 499 U.S. at 309-310. See also State v. Ford, 2007 WI 138, ¶42, 306 Wis. 2d 1, 742 N.W.2d 61 (citing Neder).

[23] Rose v. Clark, 478 U.S. 570, 577-78 (1986) (citation omitted).

[24] State v. Ford, 2007 WI 138, ¶42, 306 Wis. 2d 1, 742 N.W.2d 61 (quoting Shirley E., 2006 WI 129, ¶62, 298 Wis. 2d 1, 724 N.W.2d 623).

[25] Chapman v. California, 386 U.S. 18, 23 (1967).

[26] The decision "must be honored out of . . . respect for the individual which is the lifeblood of the law." Faretta v. California, 422 U.S. 806, 834 (1975) (quoting Illinois v. Allen, 397 U.S. 337, 350-51 (1970) (Brennan, J., concurring) (internal quotation marks omitted)). See also Chapman v. United States, 553 F.2d 886, 891 (5th Cir. 1977).

7

- The error undermines the concept of each person being ultimately responsible for choosing his or her own fate.[27]

- The error produces consequences that are unquantifiable, indeterminate, and unmeasurable.[28]

¶79 The denial of the right to testify fits within each of these descriptions of an error to which harmless-error analysis does not apply. The error in the present case defies harmless-error review. It is too difficult to determine the effect of a defendant's taking or not taking the stand on the trial's outcome.

¶80 Before I conclude, let me address two additional points raised in the majority opinion and concurrence.

¶81 First, I agree with the concurrence that the circuit court was in a difficult position, caught between protecting the defendant's two rights——the right to testify and the right not to testify.[29]

¶82 The circuit court obviously thought it ill-advised for the defendant to testify. The concurrence agrees. That the defendant may be ill-advised or unwise to testify is not the legal standard for determining whether the circuit court erred in barring the defendant from testifying. A court cannot

---

[27] See Chapman v. United States, 553 F.2d 886, 891 (5th Cir. 1977).

[28] Neder, 527 U.S. at 11; Sullivan v. Louisiana, 508 U.S. 275, 281-82 (1993).

[29] A limited colloquy is advised when a defendant elects to testify. Denson, 335 Wis. 2d 681, ¶63.

substitute its judgment for the defendant's.[30]   The defendant must have the right

> as he suffers whatever consequences there may be——to the knowledge that it was the claim that he put forward that was considered and rejected, and to the knowledge that in our free society, devoted to the ideal of individual worth, he was not deprived of his free will to make his own choice, in his hour of trial, to handle his own case.

United States v. Dougherty, 473 F.2d 1113, 1128 (D.C. Cir. 1972).

¶83 Second, the relevance of the defendant's testimony does not dictate a court's decision to bar the defendant from taking the stand to testify.  The majority opinion speculates that the information the defendant desired to present in her testimony was irrelevant.[31]  The circuit court concluded that the defendant's testimony was irrelevant to the issue of guilt or innocence.  The concurrence agrees.[32]

¶84 Relevance, or lack thereof, may be the basis for objecting to a defendant's testimony and for sustaining objections to the defendant's testimony once the defendant takes the stand.  The accused's right to testify is not unqualified and "'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. . . .'" Rock, 483 U.S. at 55 (quoted source omitted).  But a court

---

[30] See Faretta, 422 U.S. at 835-36 (asserting that a court's assessment of a defendant's legal acumen is irrelevant to its evaluation of a defendant's decision to self-represent).

[31] Majority op., ¶50.

[32] Concurrence, ¶¶55-56.

9

should not use the relevance of a defendant's testimony to justify barring the defendant from taking the stand at all. We cannot know whether her testimony is relevant before she testifies.

¶85 In the instant case, the defendant's testimony may well have been relevant. As the majority opinion acknowledges, if the defendant's testimony asserts that "it was the defendant who did not consent to the intercourse, that it was she who was raped by the child, then the issue of her consent becomes paramount." Majority op., ¶49 n.14 (quoting State v. Lackershire, 2007 WI 74, ¶29, 301 Wis. 2d 418, 734 N.W.2d 23). Because the defendant was prohibited from testifying, the jury was prevented from evaluating her version of the events and whether her cognitive and intellectual limitations played a role in her ability to consent.

¶86 For the reasons set forth, I conclude that the circuit court erred in depriving the defendant of the right to testify under the circumstances of the present case and the error cannot be subject to harmless-error analysis. The defendant in the instant case is entitled to reversal of the conviction.

¶87 For the foregoing reasons, I dissent.

¶88 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

10