SHIRLEYS. ABRAHAMSON, C.J.
¶ 111. (dissenting). I disagree with the majority opinion's resolution of both issues presented in the instant case: I. Did the circuit court violate the defendant's constitutional right to testify? II. Is the violation of a criminal defendant's right to testify to relevant evidence (here, self-defense) subject to harmless error review?
¶ 112. I would hold that the defendant was unconstitutionally deprived of the right to testify on his own behalf. I would further hold that harmless error review does not apply when a criminal defendant is denied the right to testify to relevant evidence. See my dissent in State v. Nelson, 2014 WI 70, ¶¶ 67-79, 355 Wis. 2d 722, 849 N.W.2d 317 (Abrahamson, C.J., dissenting), petition for cert. filed, 83 U.S.L.W. 3440 (U.S. Nov. 13, 2014) (No. 14-555). The majority opinion extends Nelson.
¶ 113. For these reasons, I would reverse the court of appeals decision and grant the defendant a new trial.
I
¶ 114. The majority opinion correctly acknowledges that "a defendant in a criminal case has a fundamental constitutional right to testify in his or her *162 own defense."[1] As the majority opinion points out, this right "is not absolute";[2] some limitations are both inevitable and permissible. However, according to Rock v. Arkansas, 483 U.S. 44, 56 (1987), any limitations placed on a defendant's right to testify "may not be arbitrary or disproportionate to the purposes they are designed to serve." In other words, the importance of the defendant's right to testify in his own defense must be balanced against any dangers posed by allowing the defendant to testify. As the majority explains, " '[t]he reviewing court [must] ask[] whether the reasons given for the denial are sufficiently persuasive to justify depriving the defendant of his fundamental constitutional right to testify.' "[3]
¶ 115. In the instant case, the "limitation" imposed on the defendant's right to testify was in fact a complete denial of that right, which prevented the defendant from testifying to relevant evidence, namely self-defense. The majority opinion determines that this "limitation" was "not arbitrary or disproportionate to the purposes it was designed to serve," and thus that the circuit court did not err.[4]
¶ 116. I cannot agree.
¶ 117. First, the circuit court's interest in enforcing an evidentiary ruling cannot outweigh the defendant's constitutional right to testify.
¶ 118. In the instant case, the defendant wished to present evidence that he killed the victim in self-defense. The majority opinion recognizes the impor *163 tance of the defendant's self-defense testimony.[5] To explain why he fled the scene, the defendant also intended to testify that he had been wrongfully convicted in the 1960s and had a heightened fear of the criminal justice system. The defendant's fleeing the scene was presented by the State as evidence of guilt.
¶ 119. The circuit court sought to prevent the defendant's introduction of information about his 1960s conviction, which the circuit court viewed as irrelevant and unduly prejudicial. The defendant insisted on speaking about the prior conviction. To keep this evidence out, the circuit court prevented the defendant from testifying altogether. As a result, the defendant was unable to present any evidence of self-defense (the defendant's only defense).[6]
¶ 120. The transcript of the circuit court's colloquy with the defendant, much of which is reproduced in the majority opinion,[7] demonstrates that the circuit court's primary reason for denying the defendant his right to testify was the circuit court's desire to exclude irrelevant testimony.[8]
*164 ¶ 121. The circuit court's goal of preventing the introduction of what it viewed as irrelevant and unduly prejudicial evidence is, of course, a valid one. Indeed, it is obligatory.[9] Consequently, irrelevance and undue prejudice "may be the basis for objecting to the defendant's testimony and for sustaining objections to the defendant's testimony once the defendant takes the stand."[10] But they cannot be the bases for preventing the defendant from taking the stand in the first place when the defendant intended to provide relevant testimony regarding self-defense.
¶ 122. In the instant case, this court is barring relevant testimony. In Nelson, the court insisted it was barring only irrelevant testimony.[11] In my dissent in Nelson, I took the position that "a court should not use the relevance of a defendant's testimony to justify barring the defendant from taking the stand at all. We cannot know whether [his or] her testimony is relevant *165 before [he or] she testifies."[12] The majority opinion extends Nelson in the present case.
¶ 123. Further, that the defendant's testimony may be prejudicial to the defense cannot justify a trial court's denial of the defendant's right to testify. "[A] circuit court cannot refuse to allow a defendant to testify solely because the court wishes to protect the defendant from himself or herself."[13]
¶ 124. Thus, the defendant in the instant case should have been permitted to take the witness stand and give relevant testimony. If a part of the defendant's testimony was objectionable, the State could have objected and the circuit court could have sustained the objection. If necessary, the circuit court could also have provided a limiting instruction, as the majority opinion acknowledges.[14] These steps would have comprised a proportionate response — if not a perfect solution — to irrelevant or unduly prejudicial testimony from the defendant.
¶ 125. In contrast, preventing the defendant from taking the stand altogether, which prevented the defendant from giving relevant testimony regarding *166 self-defense, constituted a disproportionate response in violation of the defendant's fundamental constitutional right to testify.[15]
¶ 126. Second, to the extent the circuit court based its denial of the defendant's right to testify on a determination that the defendant forfeited that right through "stubborn and defiant conduct that posed a serious threat to . . . the preservation of dignity, order, and decorum in the courtroom,"[16] the circuit court's response was disproportionate.
1 127. The majority opinion quotes the statement in Illinois v. Allen, 397 U.S. 337, 343 (1970), that "courts must indulge every reasonable presumption against the loss of constitutional rights,"[17] but fails to apply it to the present case. Comparing the facts of Allen with the facts of the present case demonstrates this failure.
¶ 128. The defendant in Allen sought to represent himself at trial. However, when trial commenced, the defendant's behavior posed a significant problem. The defendant repeatedly engaged in abusive, disrespectful, and disruptive conduct in the presence of the jury. For example, the defendant argued loudly with the judge, used violent language to threaten the judge, talked over opposing counsel, and ripped up papers from his case file.
¶ 129. In response, the judge instructed appointed counsel to take over representing the defendant, and repeatedly warned the defendant that his outbursts could result in removal from the courtroom. Eventually, the judge did remove the defendant from *167 the courtroom. However, the defendant was permitted to return later that day. When his disruptive conduct resumed, he was removed again, and then permitted to return again. After his second removal and return, the defendant remained in the courtroom for the rest of his trial.
f 130. The record in the instant case shows that the defendant never behaved in an unruly manner when the jury was present; that his disruptive conduct was limited to a single, lengthy colloquy with the circuit court in which the defendant insisted that if he took the stand, he would not follow the circuit court's instructions regarding the subject matter of his testimony; and that the circuit court responded to this contumacy by depriving the defendant entirely of his right to testify.
¶ 131. The judge in Allen faced far more egregious conduct than is present in the instant case, and yet the judge went to far greater lengths to protect the defendant's constitutional rights than did the circuit court in the instant case.
¶ 132. The same is true with regard to subsequent cases that have relied on Allen to justify the denial of criminal defendants' rights to testify and be present in the courtroom. Trial judges have given defendants second and third chances to participate in trial after initially denying the defendants' rights to testify and be present in the courtroom.[18] Trial judges *168 have also developed work-arounds to avoid the complete denial of defendants' constitutional rights.[19]
¶ 133. With this precedent in mind, I conclude that the circuit court's complete denial of the defendant's right to testify in the present case, which prevented the defendant from testifying to relevant evidence regarding self-defense, constitutes a disproportionate response to the dangers posed by the defendant's unruly conduct.
¶ 134. In sum, the importance of the defendant's right to give relevant testimony in his own defense must be balanced in the instant case against the possibility that the defendant would introduce irrelevant testimony and engage in disruptive behavior. In the instant case, the appropriate balance was not struck. The circuit court failed to "indulge every reasonable presumption against the loss of constitutional rights."[20]
¶ 135. The question to be asked is whether "the reasons given for the denial are sufficiently persuasive to justify depriving the defendant of his fundamental constitutional right to testify."[21] My answer is no. I conclude that the complete denial of the defendant's constitutional right to testify was error.
*169 II
¶ 136. I further conclude that the error in the instant case is not subject to harmless error review. Rather, automatic reversal is appropriate and the defendant is entitled to a new trial. I disagree with the majority opinion's statement that it is "confirm[ing] that a violation of a criminal defendant's right to testify to relevant evidence is subject to harmless error analysis." Majority op., ¶ 96 (citing Nelson, 355 Wis. 2d 722, ¶¶ 32-33).
¶ 137. The holding of the majority opinion is not dictated by Nelson. The Nelson court insisted the defendant's proposed testimony was irrelevant and applied harmless error review to the exclusion of the defendant's irrelevant testimony. In contrast, the court in the present case applies harmless error review to the exclusion of the defendant's relevant testimony regarding self-defense.
¶ 138. I explored in Nelson the distinction between errors that are subject to harmless error analysis and errors that are not.[22] In short, "a limited class of fundamental constitutional errors defy analysis by harmless error standards" and "are so intrinsically harmful as to require automatic reversal."[23]
¶ 139. I maintained in Nelson that "the defendant's right to testify falls within this category of fundamental rights not subject to harmless error analysis."[24]
*170 ¶ 140. In my dissent in Nelson, 355 Wis. 2d 722, ¶ 72-79 (Abrahamson, C.J., dissenting), I cited three primary considerations supporting this conclusion. These considerations are even more compelling in the instant case, in which the defendant was barred from testifying to relevant evidence regarding self-defense:
1. The right to testify is meaningless if the defendant is not allowed to actually testify. Testifying gives the defendant an opportunity to face his or her accusers, to tell his or her story, and to attempt to persuade those who will make a decision that profoundly affects the defendant's life and liberty. "[T]here [i]s no rational justification for prohibiting the sworn testimony of the accused, who above all others may be in a position to meet the prosecution's case."[25]
2. The right to testify is intertwined with the right of self-representation. In Faretta v. California, 422 U.S. 806 (1975), the United States Supreme Court declined to apply harmless error review to the denial of a defendant's right of self-representation. In Rock v. Arkansas, 483 U.S. 44, 52 (1987), the United States Supreme Court stated that the right to testify is even more fundamental than the right of self-representation. If a denial of the right to self-representation is not subject to harmless error review, and the right to testify is an even more fundamental right than the right of self-representation, it follows that the right to testify is not subject to harmless error review.
3. The error of denying the defendant's right to testify falls within the various formulations the *171 United States Supreme Court has provided for the category of errors not subject to harmless error review. For example, the error undermines a right founded on respect for free choice and individual human dignity; the error infects the entire trial process, rendering it fundamentally unfair; and the error produces consequences that are unquantifiable, indeterminate, and unmeasurable.
¶ 141. My conclusion that the erroneous denial of a defendant's right to testify is not subject to harmless error review is well summarized by Judge Godbold in his dissent in Wright v. Estelle, 572 F.2d 1070, 1078 (5th Cir. 1978) (Godbold, J., dissenting) (citations omitted):
To deny a defendant the right to tell his story from the stand dehumanizes the administration of justice. I cannot accept a decision that allows a jury to condemn to death or imprisonment a defendant who desires to speak, without ever having heard the sound of his voice.
The decision whether to testify is a matter of higher quality and dignity than trial happenings such as whether to object to evidence.
¶ 142. In sum, because I determine that the circuit court erred in depriving the defendant of his right to testify to relevant evidence regarding self-defense and that this error is not subject to harmless error review, I would reverse the court of appeals decision and grant the defendant a new trial.
¶ 143. For the reasons set forth, I dissent.

 Id,., ¶ 48.

 Id., ¶ 52 (quoting Arredondo v. Pollard, 498 F. Supp. 2d 1113, 1126 (E.D. Wis. 2007)).

 Majority op., ¶ 10.

 See majority op., ¶ 85.

 See id., ¶ 34.

 See id., ¶¶ 26-34.

 The following statements by the circuit court are illustrative:
I'm not making an arbitrary ruling making people follow just for my pleasure. I have this rule because this jury has a difficult decision to make. I don't want it made more difficult by having to consider matters which don't help their decision, and your difficult experience in Illinois as a younger man doesn't help them make their decision today. . . .
If it was a simple balancing test, if somebody told me that they were intentionally going to break one of the rules that we set for *164 the court and it carried only a little bit of prejudice and there was an awful lot of probative value they would otherwise have in their testimony ... [it would] give a person carte blanchfe] to break the court's rules .... There's nothing a court could do to enforce those rules. ... As a consequence if [the defendant] tried to get [the excluded evidence] in he's forfeited his right to testify.

 See Wis. Stat. § 904.02 (2009-10) ("Evidence which is not relevant is not admissible."); Wis. Stat. § 904.03 (2009-10) ("[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusing of the issues, or misleading the jury...."). All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

 State v. Nelson, 2014 WI 70, ¶ 84, 355 Wis. 2d 722, 849 N.W.2d 317 (Abrahamson, C.J., dissenting).

 Nelson, 355 Wis. 2d 722, ¶ 49 n.14.

 Id., ¶ 84 (Abrahamson, C.J., dissenting). Cf. Luce v. United States, 469 U.S. 38, 41 (1984) (holding that a court cannot weigh the probative value of a defendant's testimony against its prejudicial effect when the defendant has not testified because "the precise nature of the defendant's testimony ... is unknowable").

 Nelson, 355 Wis. 2d 722, ¶ 24. See also id., ¶ 82 (Abrahamson, C.J., dissenting) ("That the defendant may be ill-advised or unwise to testify is not the legal standard for determining whether the circuit court erred in barring the defendant from testifying.").

 See majority op., f 89.

 See Rock v. Arkansas, 483 U.S. 44, 56 (1987).

 Majority op., ¶ 95.

 Id., ¶ 88.

 See, e.g., United States v. Ives, 504 F.2d 935, 942-46 (9th Cir. 1974), vacated on other grounds, 421 U.S. 944 (1975) (the defendant engaged in persistent disruptive behavior, including repeated physical attacks against multiple attorneys, but the trial court nevertheless gave him three opportunities to testify).

 See, e.g., Ives, 504 F.2d at 943-44 (the trial court accommodated an unruly defendant's preference for testifying from the defense table without first taking an oath); Douglas v. State, 214 P.3d 312 (Alaska 2009) (after extreme disruptive conduct, including frequently interrupting the proceedings, insulting his attorneys, and even striking one of his attorneys in the face, the trial court offered to allow the defendant to testify telephonically).

 Illinois v. Allen, 397 U.S. 337, 343 (1970).

 Arredondo v. Pollard, 498 F. Supp. 2d 1113, 1126 (E.D. Wis. 2007).

 Nelson, 355 Wis. 2d 722, ¶¶ 70-71 (Abrahamson, C.J., dissenting).

 Neder v. United States, 527 U.S. 1, 7 (1999) (internal quotation marks omitted).

 Nelson, 355 Wis. 2d 722, ¶ 72 (Abrahamson, C.J., dissenting).

 Ferguson v. Georgia, 365 U.S. 570, 582 (1961).